STATE OF CONNECTICUT *v.* ARIEL HERNANDEZ
(14017)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

Argued January 10—decision released April 30, 1991

*Robert M. Casale,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* deputy assistant state's attorney, with whom, on the brief, was *Mary Galvin,* state's attorney, for the appellee (state).

GLASS, J. After a jury trial, the defendant, Ariel Hernandez, was convicted of the crime of sale of cocaine by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[1] He was sentenced to a term of five years imprisonment.

The defendant appealed to the Appellate Court, raising three grounds for reversal predicated on the trial court's refusal to give certain requested instructions to the jury. The Appellate Court rejected the defendant's claims and affirmed the judgment of conviction in *State* v. *Hernandez,* 21 Conn. App. 235, 573 A.2d 5 (1990). Thereafter, we granted his petition for certification to appeal limited to the following questions: (1) "Is the defendant entitled to have the trial court marshal the evidence to present the evidence of the defense as well as the evidence of the prosecution?"; (2) "Is the defendant entitled, upon request, to have the jury instructed that the arguments of counsel are not evidence?"; and (3) "Is the defendant entitled, upon request, to have the jury instructed that an information is not evidence of guilt?" *State* v. *Hernandez,* 216 Conn. 804, 577 A.2d 716 (1990). We reverse.

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

The facts are as follows. On June 12, 1986, as part of an undercover investigation of drug trafficking in the Naugatuck Valley, police officer Linda Guerra entered the Kozy Korner bar on Olivia Street in Derby for the purpose of attempting to purchase drugs. She was equipped with a hidden microphone so that three other officers located in vehicles outside the bar could monitor her conversations. At the defendant's subsequent trial, Guerra testified that she had met him in the bar and purchased from him a substance that the state's expert toxicologist identified at trial as cocaine. Guerra testified further that she had then proceeded to the Monkey Bar on Hawkins Street in Derby, and that the defendant had arrived there sometime later. According to Guerra, she had asked the defendant how she could contact him if she wanted to purchase additional cocaine, and he had given her a business card imprinted with the name "Al Hernandez." Guerra had later identified the defendant from a photographic array and again in court at his trial.

The defendant's basic claim at trial was that he was not the person who had sold cocaine to Guerra. To substantiate this claim, the defendant sought to establish, by his own testimony, that his inability to produce an alibi or otherwise recollect his whereabouts on the date of the alleged sale was due to the passage of approximately one year between that date and the date of his arrest. In short, the essence of his defense was that while he was uncertain as to his whereabouts due to the delay, he was certain that he had never sold cocaine to Guerra. The defendant testified that he had patronized the Kozy Korner bar prior to 1986, but could not recall having gone there in 1986. Furthermore, he testified that although he had visited the Monkey Bar a "few" times and had left a stack of business cards on the bar, and had given his business card to many people, he had no recollection of having seen Guerra

there or having given her a business card. During Guerra's cross-examination, the defendant sought to establish that she had mistakenly identified him as the perpetrator of the crime. His cross-examination of the officers who had accompanied Guerra to the bars revealed that Guerra's conversations had not been recorded. Furthermore, while she had been in the bars, the officers had been unable to identify any voice other than hers and that of a male, or to understand the nature of her conversations. As for the state's toxicologist, the defendant attacked his methods of testing substances as unreliable.

The defendant's first claim focuses on the trial court's marshalling of the state's claims and evidence in its jury charge to the exclusion of the claims and evidence of the defense.[2] He maintains that this marshalling amounted to such an unfair presentation of the case to the jury that he was deprived of his federal and state constitutional rights to due process.[3] We agree with the defendant that the one-sided rendition of the case given by the court was prejudicially unfair.

A trial court has broad discretion to comment on the evidence adduced in a criminal trial. *State* v. *James,* 211 Conn. 555, 571, 560 A.2d 426 (1989). " 'A jury trial in which the judge is deprived of the right to comment on the evidence and to express his opinion as to the facts . . . is not the jury trial which we inherited.' " (Citations omitted.) 3 W. LaFave & J. Israel, Criminal Procedure (1984) § 23.7 (c). A trial court often has not only the right, but also the duty to comment on the

---

[2] The defendant took an extensive exception to the court's "marshalling the evidence."

[3] Since the federal and state constitutions impose similar due process limitations, we have treated the defendant's federal and state due process claims together. See *Sekou* v. *Warden,* 216 Conn. 678, 690 n.7, 583 A.2d 1277 (1990).

evidence. *Heslin* v. *Malone,* 116 Conn. 471, 477, 165 A. 594 (1933). The principal function of a jury charge is "to assist the jury in applying the law correctly to the facts which they might find to be established"; *State* v. *Sumner,* 178 Conn. 163, 170, 422 A.2d 299 (1979); and therefore, we have stated that a charge "must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven." Id., 170–71; see *State* v. *Pollitt,* 205 Conn. 132, 159, 531 A.2d 125 (1987).

The purpose of marshalling the evidence, a more elaborate manner of judicial commentary, is "to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality." *United States* v. *Levy,* 578 F.2d 896, 903 (2d Cir. 1978). "The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' " *Quercia* v. *United States,* 289 U.S. 466, 470, 53 S. Ct. 698, 77 L. Ed. 1321 (1933); see *State* v. *Fernandez,* 198 Conn. 1, 12, 501 A.2d 1195 (1985). To avoid the danger of improper influence on the jury, a recitation of the evidence " 'should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention.' " *Kevin Roche-John Dinkeloo & Associates* v. *New Haven,* 205 Conn. 741, 746, 535 A.2d 1287 (1988); *Anderson & McPadden, Inc.* v. *Tunucci,* 167 Conn. 584, 591, 356 A.2d 873 (1975); *State* v. *Rome,* 64 Conn. 329, 339, 30 A. 57 (1894). "Even where the defendant has presented no evidence, the [trial] court's summary of the evidence should try to give fair recognition to relevant points

raised by the defense in cross-examination as well as to the general theory of the defense." *United States* v. *Levy,* supra.

In addition, a court must take care to avoid making "improper remarks which are indicative of favor or condemnation"; *State* v. *Echols,* 170 Conn. 11, 14, 364 A.2d 225 (1975); and must not indulge in an argumentative rehearsal of the claims of one side only. *State* v. *Pollitt,* supra, 155–56. Such proscriptions are of heightened importance in a criminal case, where considerations of due process require that " 'a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . .' " (Citations omitted.) *State* v. *Gordon,* 197 Conn. 413, 424D–25, 504 A.2d 1020 (1985). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the state's accusations." *Chambers* v. *Mississippi,* 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). "[P]artisan commentary, if fairly established by the record . . . deprives defendants of the very essence of their constitutional right to a fair trial by an impartial jury." *State* v. *Stange,* 212 Conn. 612, 621, 563 A.2d 681 (1989).

The state takes the position that the court did not transgress the bounds of fair comment in this case. In its view, the sole evidence presented by the defendant was his own testimony, and therefore, the Appellate Court justifiably attributed the lack of parity in the court's charge to the dearth of defense evidence as compared to the "much greater quantity" of evidence presented by the state. See *State* v. *Hernandez,* supra, 21 Conn. App. 239. The state further contends that the Appellate Court properly concluded that any deficiency in the trial court's summary was remedied by the instructions to the jury "on at least two occasions that *its* recollection of the evidence, and not the trial court's,

was controlling."[4] (Emphasis in original.) Id. Our review of the charge as a whole leaves us unpersuaded.

The record discloses that, in its charge, the court recapitulated nearly all of the state's testimonial and physical evidence, frequently commented favorably on the credibility of the state's witnesses and thoroughly explained how the state's evidence related to the essential elements of the crime charged. At one point, the court summed up the state's claims and evidence as follows: "Again, the case is basically, as I believe one or more counsel said, a simple case. It is a case of an undercover officer, working in an undercover capacity and backed up by other officers for that undercover officer's safety, going into a public place and meeting someone whom she identified as the defendant and making a sale and purchase, in this case, as I recall her testimony." The sole reference to the defendant's testimony, on the other hand, was juxtaposed with a cautionary remark regarding his interest in the case,[5] and there was no mention of the points that he had sought to make through cross-examination of all but one of the state's witnesses.[6] Moreover, the single reminder that

---

[4] As noted by the Appellate Court, the trial court instructed the jury: "If I refer to certain facts or to certain evidence in the case you are not to assume that I mean thereby to emphasize with any particularity those facts or that evidence, nor must you limit your consideration only to them. Should I overlook any evidence in this case, and I undoubtedly will, you will supply it from your own recollection. And I say that because it is not my function to repeat to you my recollection of all the evidence in the case." See *State* v. *Hernandez,* 21 Conn. App. 235, 239–40 n.2, 573 A.2d 5 (1990). The court also gave the following instruction: "If I may have made any reference to the position of the state or of the defendant or more of the one than of the other, it is not my intention to convey to you directly or indirectly how the court feels as to what should be the outcome of this case." See id.

[5] The court stated that the defendant was "entitled to a fair and careful consideration of his testimony, but, at the same time, he must have his testimony tested and measured in the same way as any other witness, including the element of his interest in the decision you are to render."

[6] The court did mention the defendant's cross-examination of the state's expert toxicologist.

the defendant had raised any claim to innocence was the following unadorned statement: "The defendant justly relies on you to consider carefully his claims, to evaluate carefully all of the evidence and to render a verdict of not guilty if the facts and law require such a verdict." Not the slightest allusion was made to his theory of defense.

In evaluating the court's charge, we are cognizant that " ' "[t]he test of a charge is not whether it applies pertinent rules of law to every ramification of facts conceivable from the evidence. . . ." ' " *Tezack* v. *Fishman & Sons, Inc.,* 173 Conn. 183, 186, 377 A.2d 272 (1977). The pertinent test is whether the charge, read in its entirety, "fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." *State* v. *Ballas,* 180 Conn. 662, 680, 433 A.2d 989 (1980). Assuming that an injustice was indeed done, "[t]he defendant is entitled to a new trial in such circumstances, however, only where he can show that prejudice resulted from the court's actions." *State* v. *Gordon,* supra, 425; see *State* v. *Echols,* supra, 16.

In the present case, in which the court extensively detailed the state's claims and its evidence in support thereof, and little or no reference was made to the defendant's exculpatory evidence and his theory of defense, we conclude that the case was presented to the jury in such a way that injustice was done to the defendant and that he was prejudiced thereby. It is fair to say that despite the court's disclaimers,[7] the jury was likely to have interpreted the partisan rehearsal of the case as an indication that the court in this "simple case" believed that the defendant's claims and evidence, seemingly not worthy of comment, likewise were not worthy of consideration. Furthermore, there was

---

[7] See footnote 4, supra.

a strong likelihood of prejudice arising from the disparate presentation of the case. The court's instructions to the jurors that their recollection of the evidence was controlling, while accurate, gave no direction as to how the legal principles stated in the charge should be applied to any defense evidence recalled, and no indication of how such evidence should be evaluated in determining whether the state had satisfied its burden of proving his guilt beyond a reasonable doubt. Since the jury was left without guidance as to the role of the defendant's evidence in the case, we cannot say that these general instructions cured the imbalance in the court's charge or obviated the probability of harm resulting therefrom. See *State* v. *Echols,* supra, 15–16; see also *State* v. *Tinsley,* 180 Conn. 167, 170, 429 A.2d 848 (1980).

Moreover, we can hardly say that the state's evidence in this case, albeit sufficient for a finding of guilt, was overwhelming. Therefore, we need not decide whether overwhelming evidence of guilt would have cured the effect of the trial court's improper marshalling of the evidence in this case.

Our conclusion that the defendant must prevail on the first certified issue renders it unnecessary to consider the second and third certified issues, because it is unlikely that they will arise on retrial.

The judgment is reversed and the case is remanded to the Appellate Court with direction to remand the case to the trial court for a new trial.

In this opinion the other justices concurred.