STATE OF CONNECTICUT *v.* TODD DARNELL DAVIS
(SC 16329)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued December 6, 2000—officially released April 24, 2001

*Pamela S. Nagy*, special public defender, with whom were *Donald LaRoche*, certified legal intern, and, on the brief, *Christopher N. Parlato*, certified legal intern, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Donna Mambrino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether General Statutes § 53-202k,[1] which requires that a defendant receive an additional five year sentence when a firearm is involved in the commission of certain felonies, applies to unarmed accomplices. A jury convicted the defendant, Todd Darnell Davis, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2),[2] and burglary in the first degree in violation

---

[1] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

of General Statutes § 53a-101 (a) (1).[3] After the trial court rendered judgment sentencing the defendant for these offenses, it imposed two additional five year terms of imprisonment for the commission of a class A, B or C felony with a firearm, pursuant to § 53-202k. The defendant appeals claiming, inter alia, that his convictions of robbery in the first degree and burglary in the first degree are not amenable to enhancement under § 53-202k because that provision applies only to convictions based on principal, not accessorial, liability.[4] We conclude that the application of the sentence enhancement statute to an accessory was proper and, therefore, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 19, 1997, the defendant and another man entered a Burger King restaurant by hurling a cement block through a locked glass door. The men subsequently entered the establishment wearing masks and jumped over the service counter. Two employees, who were in the process of closing the restaurant for the evening, described one of the men as tall, thin and armed with a handgun, and described the other man as being of medium build and height. In an effort to appease the men, one of the employees offered them the money in the restaurant's safe. As the employee worked to open the safe, the tall, thin man held a gun to the employee's head. Once the safe was opened, the two men seized the cash and exited through the rear door. As the men drove out of the parking lot, the employee gained an unobstructed view of their vehicle. The employee instructed someone to call 911 with a

---

[3] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument . . . ."

[4] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-2.

description of the vehicle, which included the license plate number VMGEEN.

As the police dispatcher reported the armed robbery and a description of the vehicle involved, a police officer observed a vehicle that matched the description traveling at a high rate of speed and bearing the license plate number VMGEER. A chase of the vehicle ensued. After briefly losing sight of the vehicle, the police located it in the parking lot of an apartment complex. The car was abandoned but still running. Inside the vehicle, the police discovered a nine millimeter Smith and Wesson handgun, a cash drawer, a ski mask and cash strewn about.

A certified canine police dog was used to track the scent from the driver's seat area and led the police to the discovery of a backpack hidden in the nearby woods. The backpack contained approximately $3261.25 in cash and a Burger King bank deposit slip. Thereafter, the police dog continued to track the scent and followed it to the defendant, whom the police temporarily had detained for questioning. The dog indicated through its actions that the suspect was the same individual who previously had been in the driver's seat of the abandoned vehicle. Upon questioning by the police, the defendant explained that he was coming from a friend's house and had been out for a jog. The defendant was unable to say where his friend lived or the friend's last name. The defendant's girlfriend, who also lived in the area, was unable to confirm that the defendant had been jogging. The second robber has never been identified or apprehended.

Prior to trial, the state served notice on the defendant that, in the event of his conviction for a class A, B or C felony with a firearm, he would be subject to the mandatory sentence enhancement provisions of § 53-202k. At trial, the state provided evidence that footprints

at the restaurant were made by the defendant's sneakers. In addition, there was evidence that hair strands recovered from the mask located in the abandoned vehicle were similar to hair strands belonging to the defendant. The defendant did not testify at trial and presented no witnesses at trial. The jury ultimately convicted the defendant of robbery in the first degree in violation of § 53a-134 (a) (2), and burglary in the first degree in violation of § 53a-101 (a) (1).

At the sentencing hearing, the defense counsel remarked, and the state agreed, that there was testimony at trial indicating that the defendant, if present at the crime scene, was unarmed. Thereafter, the court imposed a sentence of eighteen years for the robbery conviction, plus a consecutive five year enhancement pursuant to § 53-202k. Additionally, the court imposed a sentence of five years for the burglary conviction, plus a five year enhancement pursuant to § 53-202k, to run concurrently with the robbery sentence. Thus, the total effective sentence was twenty-three years.[5] Regarding the application of the sentence enhancement, the court explained: "As to any language interpretation of § 53-202k, it's the court's position that even though the language says 'any person,' that it does not make clear that he has to be the actual person who possesses the gun; that just like any automatic accessorial language that a principal and accessory are equally guilty, that must also apply to the § 53-202k language and that, therefore, he is guilty also under the § 53-202k language under accessorial liability."

The defendant's appeal from the judgment of the trial court is limited to the following issues: (1) whether the

[5] The court initially imposed a sentence of thirteen years for the robbery conviction, a concurrent five year sentence for the burglary conviction, and two consecutive five year terms, one for each conviction, in accordance with § 53-202k. Almost immediately, the court announced a correction of sentence resulting in the sentence explained in the text of this opinion.

trial court properly imposed an additional five year imprisonment to both the defendant's sentences, pursuant to § 53-202k, where he was an unarmed accomplice; (2) if so, whether the defendant's sentences under § 53-202k should be vacated because the trial court imposed the mandatory five year sentences without having the jury determine whether a firearm was used during the commission of the crimes; and (3) whether the trial court's jury instructions improperly invaded the province of the jury by suggesting that certain elements of the state's case had been proven and that the defendant was guilty. We conclude that: (1) the trial court properly applied § 53-202k to an unarmed accomplice; (2) the defendant's sentences under § 53-202k should not be vacated because the trial court's failure to instruct the jury to determine whether a firearm was used during the commission of the crimes was harmless; and (3) the trial court's instructions to the jury were not unfairly suggestive. Accordingly, we affirm the judgment of the trial court.

## I

The defendant first claims that the trial court's application of § 53-202k, which resulted in an enhanced sentence, is inapplicable to him as an unarmed accomplice. Specifically, the defendant contends that the plain language and legislative history of § 53-202k demonstrate the legislature's intent that the statute apply only to an individual who actually uses a firearm during the commission of a felony. The state, on the other hand, urges application of the enhancement statute to the defendant because the basic theory of accessorial liability requires such an interpretation. We agree with the state and, therefore, we conclude that an unarmed accomplice is subject to an enhanced penalty under § 53-202k.[6]

---

[6] The defendant concedes that he did not object to the trial court's application of § 53-202k and, therefore, that his claim was not preserved at trial. He therefore claims to prevail pursuant to *State* v. *Golding*, 213 Conn. 233,

Our analysis is governed by well established principles of statutory construction. "Statutory construction is a question of law and, therefore, our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Velasco*, 253 Conn. 210, 219–20, 751 A.2d 800 (2000); see also *State* v. *Parra*, 251 Conn. 617, 622, 741 A.2d 902 (1999); *State* v. *Dash*, 242 Conn. 143, 146–47, 698 A.2d 297 (1997).

When the statute in question is one of a criminal nature, we are guided by additional tenets of statutory construction. First, it is axiomatic that we must refrain from imposing criminal liability where the legislature has not expressly so intended. *State* v. *Breton*, 212 Conn. 258, 268–69, 562 A.2d 1060 (1989). Second, "[c]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant." (Internal quotation marks omitted.) *State* v. *Jones*, 234 Conn. 324, 340, 662 A.2d 1199 (1995). Finally, "unless a contrary

567 A.2d 823 (1989). In *Golding*, we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. We conclude that the defendant failed to demonstrate that a constitutional violation clearly exists and, therefore, his claim fails under the third prong of *Golding*.

interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state." *State* v. *Ross*, 230 Conn. 183, 200, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995).

With these guidelines in mind, we look to the text of § 53-202k. The statute provides for a mandatory five year term of imprisonment whenever a defendant, "in the commission of [any class A, B or C] felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3 . . . ." General Statutes § 53-202k. The defendant equates the statute's failure to make an express reference to accomplices with an affirmative decision by the legislature to apply § 53-202k only to principals. We disagree.

In making such an assertion, the defendant attempts to draw a distinction between principal and accessorial liability. Such a differentiation, however, misconstrues the nature of accessorial liability. This court has long since abandoned any practical distinction between the terms "accessory" and "principal" for the purpose of determining criminal liability. *In re Ralph M.*, 211 Conn. 289, 299, 559 A.2d 179 (1989); *State* v. *Foster*, 202 Conn. 520, 532, 522 A.2d 277 (1987). "The defendant is incorrect . . . when he argues that his liability turns on whether he was found to be a 'principal' or an 'accessory.' Those labels are hollow . . . ." *State* v. *Harris*, 198 Conn. 158, 165, 502 A.2d 880 (1985). Instead, "[t]he modern approach is to abandon completely the old common law terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime." (Internal quotation marks omitted.) *State* v. *Foster*, supra, 532. The legislature adopted this view and expressed it in General Statutes

§ 53a-8 (a).[7] Accordingly, "accessorial liability is not a distinct crime, but only an alternative means by which a substantive crime may be committed . . . ." *State* v. *Foster*, supra, 532.

This principle is apparent throughout our state's criminal statutes. General Statutes § 53a-54a (a), for example, provides that "[a] person is guilty of murder when, with intent to cause the death of another person, *he causes* the death of such person . . . ." (Emphasis added.) The fact that our murder statute prohibits specified criminal conduct of the principal actor, without ever expressly including accomplices, does not preclude its application to accomplices. Although, by its terms, our murder statute encompasses only the principal actor, it undoubtedly applies to all participants in the crime. See, e.g., *State* v. *Henry*, 253 Conn. 354, 358, 752 A.2d 40 (2000); *State* v. *Delgado*, 247 Conn. 616, 622, 725 A.2d 306 (1999).

The defendant's liability in the present case, which stems from his role as an accessory, provides a similar example. The defendant was charged with and convicted of robbery and burglary in the first degree, crimes which necessarily entail possession of a deadly weapon. The state, however, did not allege that the defendant was the participant actually in possession of the deadly weapon. The court's jury charge demonstrates that the identity of the actual possessor of the weapon was irrelevant. The court explained that "[t]here's only one charge. There's the burglary [in the first degree] charge. There is no such crime as being an accessory. The accessory statute merely provides an alternative means by which a substantive crime may be permitted. . . .

---

[7] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

So you can look at the defendant, whether or not he's guilty, as the princip[al] or the accessory. It's one and the same thing. All you have to be unanimous on is it's one or the other to find him guilty beyond a reasonable doubt."[8] Thus, we reject the defendant's argument that the legislature's decision not to include any accessory language in § 53-202k renders the statute inapplicable to such persons.

"Because the legislature is presumed to know the state of the law when it enacts a statute; *State* v. *Dabkowski*, 199 Conn. 193, 201, 506 A.2d 118 (1986); we can assume that, absent an affirmative statement to the contrary, it did not intend to change the existing law to create a distinction between accessories and principals when it enacted the present [enhancement statute]." *In re Ralph M.*, supra, 211 Conn. 300. Had the legislature intended to deviate from our usual practice of treating accessories and principals alike, it "easily could have expressed this intent." *State* v. *Desimone*, 241 Conn. 439, 455, 696 A.2d 1235 (1997); see also *State* v. *Velasco*, supra, 253 Conn. 228. In the absence of specific language to that effect, we refuse to adopt an interpretation of § 53-202k that would require courts to retreat to the days of determining which actors should be identified as principals and which should be identified as accomplices.

---

[8] It should be noted that our burglary statute, § 53a-101, provides for liability if the actor commits the prohibited conduct. See footnote 3 of this opinion. Thus, it was necessary for the court to inform the jury that our criminal statutes automatically apply to accessories. In doing so, the court explained to the jury that there is no difference whether the defendant was the principal or accessory for purposes of a conviction under the burglary statute.

By contrast, our robbery statute, § 53a-134, includes explicit accessory language within the text of the statute. See footnote 2 of this opinion. Because the robbery statute applies to principals and accessories on its face, the court did not need to explain the concept of accessorial liability to the jury as it relates to the robbery charge.

The fact that § 53-202k is a sentence enhancement provision rather than a separate and distinct offense; see *State* v. *Dash,* supra, 242 Conn. 148; is of no consequence to our analysis. The accomplice liability statute permits an accessory to be "prosecuted and *punished as if he were the principal offender.*" (Emphasis added.) General Statutes § 53a-8 (a). Thus, once convicted of armed robbery and armed burglary, even if as an accessory, the defendant is legally indistinguishable from the principal actor. Accordingly, the defendant is subject to the enhancement penalty that the principal also would have received had he been caught and convicted. For purposes of legal analysis, it is irrelevant that the defendant did not actually possess the gun.

The defendant's argument, taken to its logical end, would require a determination as to which party was the accessory and which party was the principal in any crime involving more than one participant.[9] We decline

---

[9] Under the defendant's approach, the resolution of a crime involving more than one participant necessarily would require a determination as to which individuals were principals and which individuals were accessories. An example of the difficulty that accompanies such a position was provided at oral argument before this court. Suppose that two assailants enter a store. One holds a gun and forces the cashier to hand over the contents of the register, while the other actually seizes the cash. The defendant is requesting that a determination be made as to which of these individuals, if any, would be an accomplice. If, in fact, the armed individual is the accessory, he would not be eligible for the sentence enhancement. Moreover, the assailant who seized the cash also would be ineligible for the sentence enhancement since he did not possess the firearm.

Another example may illustrate more clearly the absurdity that would occur if we now had to categorize our criminals based on these previously forsaken distinctions. Suppose that an unarmed assailant committed a sexual assault on a victim who was restrained by an armed assailant. The defendant's approach would name the armed individual as an accomplice, and the unarmed individual as the principal. Neither, however, would be eligible for the sentence enhancement since the principal did not possess the firearm.

We cannot adopt any approach that could make these peculiar scenarios a reality. Rather, we rely on § 53a-8, which dictates that principals and accessories suffer the same consequences. Accordingly, a determination as to which participants to the crime fit within a particular category is unnecessary.

to abandon years of case law that clearly has established the insignificance of this distinction for the purposes of criminal liability.

## II

Having determined that § 53-202k applies to accomplices, we now must address whether the trial court improperly imposed the enhanced sentence. The defendant claims that the trial court improperly failed to have the jury determine whether the state had proven that the defendant, or an accomplice, had used a firearm in the commission of a class A, B or C felony in violation of § 53-202k. The enhanced penalty, the defendant argues, should therefore be vacated. The state maintains, however, that it was harmless error for the trial court, rather than the jury, to determine that the requisite elements of § 53-202k had been satisfied. Although we agree that the jury, and not the trial court, must make the factual findings required under § 53-202k, we conclude that under the circumstances of this case, the trial court's failure to instruct the jury regarding the elements of the sentence enhancement statute was harmless.[10]

In *State* v. *Velasco*, supra, 253 Conn. 217, we determined that it was not the legislature's intent to eliminate the jury's role as fact finder during application of § 53-202k. Accordingly, we held that § 53-202k requires the jury, and not the trial court, to determine whether a defendant uses a firearm in the commission of a class A, B or C felony for purposes of the enhancement penalty. Id. We also noted, however, that the trial court's failure to allow the jury to make the factual determina-

---

[10] We review this unpreserved claim, as we have in the past, under the principles of *State* v. *Golding*, supra, 213 Conn. 233. See *State* v. *Montgomery*, 254 Conn. 694, 735 n.46, 759 A.2d 995 (2000). Although the record is adequate for our review of the defendant's constitutional claim, he cannot prevail under the fourth prong of *Golding* because the state was able to demonstrate that the error was harmless beyond a reasonable doubt. See footnote 6 of this opinion.

tions pursuant to § 53-202k was amenable to harmless error analysis. Id., 233. In the course of that analysis, we explained that the defendant's conviction for felony murder and conspiracy to commit robbery was not necessarily predicated on a finding that the defendant was armed.[11] Id., 235–36. Thus, we set forth the standard by which harmless error in omitted jury instructions should be measured. "A jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error . . . . *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Velasco*, supra, 232–33; see also *State* v. *Faust*, 237 Conn. 454, 470–71, 678 A.2d 910 (1996). We concluded in *Velasco* that the evidence that the defendant utilized a firearm during the commission of the felony was neither overwhelming nor uncontested. *State* v. *Velasco*, supra, 234. Accordingly, we determined that the trial court's error was harmful and we vacated the enhanced penalty under § 53-202k. Id., 236.

In *State* v. *Montgomery*, 254 Conn. 694, 735, 759 A.2d 995 (2000), however, we concluded that a similar error was harmless. In *Montgomery*, the trial court failed to instruct the jury regarding the elements of § 53-202k. Id., 737. Nevertheless, we concluded that "the jury's

---

[11] The relevant issue in *Velasco* was whether the defendant himself was armed during the commission of a class A, B or C felony. We expressly declined to address whether § 53-202k applies to unarmed accomplices. *State* v. *Velasco*, supra, 253 Conn. 236. Accordingly, our conclusion in that case that the jury's guilty verdict did not necessarily rest on a finding that the defendant personally was armed, does not preclude our decision today. Having now concluded that § 53-202k does apply to unarmed accomplices, the jury's guilty verdict need rest only upon a finding that the defendant *or an accomplice* personally was armed.

finding that the defendant had committed murder, a class A felony, necessarily satisfied the requirement of § 53-202k that the defendant commit a class A, B or C felony. Because, however, the use of a firearm is not an element of the crime of murder . . . the jury lawfully could have returned a finding of guilty on the murder charge without also having found that the defendant had used a firearm in the commission of that crime." Id. Referring to the harmless error standard as it relates to an omitted element in the jury charge, we explained that the defendant did not contest the "incontrovertible evidence" that the victim was shot with a firearm. Id., 738. Because the jury found beyond a reasonable doubt that the defendant was guilty of the victim's murder, a class A felony, and because the defendant did not dispute the fact established by incontrovertible evidence, that a firearm caused the victim's fatal wounds, we concluded that the omitted element was "uncontested and supported by overwhelming evidence." Id. Accordingly, the error was harmless beyond a reasonable doubt. Id.

In the present case, it is undisputed that the trial court failed to instruct the jury on either of the two elements of § 53-202k. By virtue of finding the defendant guilty of robbery and burglary in the first degree, however, the jury necessarily found that the defendant had committed class B felonies. Thus, the jury, in effect, made the proper factual determination with respect to the first element of § 53-202k.

With respect to the second element of § 53-202k, the defendant did not dispute the overwhelming evidence that *either he or another participant* utilized a firearm during the commission of the crime. First, a finding that one of the participants to the crime was armed with a deadly weapon is indispensable to the jury's verdict that the defendant was guilty of robbery and

burglary in the first degree.[12] The defendant contends, rather, that his convictions likely were predicated on the fact that the other participant, rather than the defendant himself, was armed. As previously stated in part I of this opinion, we refuse to recognize this distinction. Second, several witnesses testified that the "tall and thin" intruder, not the defendant, possessed a handgun during the commission of the crime. Finally, a nine millimeter Smith and Wesson handgun was recovered in the abandoned vehicle linked to the crime. None of this evidence was challenged by the defendant. Accordingly, we conclude that there was "uncontested" and "overwhelming evidence" that a firearm was involved in the commission of these class B felonies.[13] The two elements of § 53-202k clearly had been satisfied. Thus, the trial court's failure to instruct the jury on the elements of § 53-202k was harmless beyond a reasonable doubt.[14]

[12] Both first degree robbery and first degree burglary require a participant to be armed with a deadly weapon. See footnotes 2 and 3 of this opinion.

[13] Although underscoring the importance of using a separate part B information to avoid the possibility of prejudice with our persistent offender statute, we rejected a similar need for a separate part B information in conjunction with prosecutions under § 53-202k. See *State* v. *Velasco*, supra, 253 Conn. 225 n.13. In doing so, we noted that "the proscribed use of a qualifying firearm requires additional factual findings relevant to the offense itself, not to the nature of the offender, and is thereby typically established by the same evidence used to demonstrate culpability for the underlying felony." Id., 225–26 n.13. Accordingly, in the present case, the court's failure to allow the jury expressly to find that the second element of § 53-202k was satisfied was not dispositive because the jury had considered such evidence in its consideration of the underlying felonies.

[14] The United States Supreme Court recently has announced that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 146 L. Ed. 2d 216 (2000). In doing so, the Supreme Court did not address whether the failure to make such a submission to the jury is amenable to a harmless error analysis.

Constitutional errors deemed inappropriate for harmless error analysis arise from structural defects in the trial mechanism. *Arizona* v. *Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). The Supreme Court, however, has determined that the omission of an element of a criminal offense from a jury instruction is not a structural defect and, therefore, is

## III

The defendant's final claim is that the trial court improperly invaded the province of the jury by suggesting that certain elements of the state's case had been proven and that it believed that the defendant was guilty. The defendant failed to preserve this claim at trial and now seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[15] Because the defendant failed to demonstrate that a constitutional violation clearly exists and deprived him of a fair trial, his claim fails under the third prong of *Golding*.

"The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . and therefore, we have stated that a charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven." (Internal quotation marks omitted.) *State* v. *Figueroa*, 235 Conn. 145, 169, 665 A.2d 63 (1995); see also *State* v. *Canty*, 223 Conn. 703, 716, 613 A.2d 1287 (1992). "A trial court often has not only the right, but also the duty to comment on the evidence." *State* v. *Hernandez*, 218 Conn. 458, 461–62, 590 A.2d 112 (1991). "To avoid the danger of improper influence on the jury, a recitation of the evidence should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserves equal attention. . . . In marshaling the evidence, the court must be careful not to imply any favor or criticism of either side." (Cita-

---

subject to harmless error analysis. *Neder* v. *United States*, supra, 527 U.S. 17. Thus, *Apprendi* does not preclude our use of the harmless error analysis in the present case, wherein there was no structural defect. See *Sustache-Rivera* v. *United States*, 221 F.3d 8, 17–18 (1st Cir. 2000).

[15] See footnote 6 of this opinion.

tion omitted; internal quotation marks omitted.) *State v. Figueroa*, supra, 170.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . *State v. Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995). . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case." (Citations omitted; internal quotation marks omitted.) *State v. Albert*, 252 Conn. 795, 815–16, 750 A.2d 1037 (2000); see also *State v. Hernandez*, supra, 218 Conn. 465; *State v. Collette*, 199 Conn. 308, 316–17, 507 A.2d 99 (1986). Having evaluated the court's comments in their entirety, we are unpersuaded that an injustice occurred.

The defendant argues that the court's charge suggested to the jury that certain elements of the state's case had been proven and that the defendant was guilty. Our review of the charge, however, reveals no such implications. Although the court may have provided a more detailed account of the state's evidence, its summary of the defendant's evidence was more than adequate. "One obvious reason more time was spent

in marshalling the state's evidence is simply that there was more of it." *State* v. *Marra*, 222 Conn. 506, 539, 610 A.2d 1113 (1992). The defendant did not testify at trial, nor did he present much evidence. Although it is undeniable that a jury charge must not mislead the jury, "the nature and extent of the trial court's comments . . . largely depend on the facts involved in a particular case and the manner in which it has been tried." (Internal quotation marks omitted.) *State* v. *Pollitt*, 205 Conn. 132, 155, 531 A.2d 125 (1987).

We are further persuaded that the jury charge was sufficient given the extent to which the court did recapitulate evidence offered by the defense. For example, the jury charge noted that the defense elicited inconsistent statements from some of the state's witnesses. The court also called attention to the fact that no one had positively identified the defendant as the perpetrator of the crime. In addition, the jury charge explicitly presented the defendant's theory of defense,[16] the inclusion of which has been relevant to our decision to uphold the adequacy of jury charges in other cases.[17]

The defendant also disregards numerous other comments made by the court that demonstrate the overall impartial and unbiased nature of the jury charge. On two separate occasions, the court instructed the jury that the court had no opinion as to the innocence or guilt of the defendant, and any expressions by the court were not indicative of such. The court ·also clearly explained to the jurors that they were the sole assessors

---

[16] The court stated that "[t]he defendant denies that he is the person who was involved in the commission of the alleged offenses at Burger King. He is thus raising the issue of mistaken identity."

[17] See, e.g., *State* v. *Figueroa*, supra, 235 Conn. 171 (upholding jury charge that included defendant's theory of defense); *State* v. *Hernandez*, supra, 218 Conn. 465 (holding that trial court's improper jury charge failed to include defendant's theory of defense); *State* v. *Pollitt*, supra, 205 Conn. 159 (upholding jury charge that included defendant's theory of defense).

800

of which testimony to believe and which to reject. More-
over, there were numerous warnings throughout the
charge that the state bore the burden to prove the defen-
dant guilty beyond a reasonable doubt. Finally, the
charge was replete with reminders that the jury, and
not the court, was the lone evaluator of all issues of fact.

There is no reason to believe that the court's charge
ignored the defendant's evidence. See *State* v. *Figueroa*,
supra, 235 Conn. 170. The court specifically mentioned
evidence supporting the defendant where applicable.
Moreover, even a cursory review of the transcript
reveals the neutral commentary that permeates the jury
charge. The defendant's claim focuses on only a few of
the court's specific comments, and ignores the overall
content of the charge. Accordingly, we conclude that
the court did not invade the province of the jury and
the defendant's claim, therefore, fails to satisfy the third
prong of *Golding*.

The judgment is affirmed.

In this opinion the other justices concurred.