******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERT T. MADERA
(AC 35198)

DiPentima, C. J., and Prescott and Bear, Js.

*Argued April 7—officially released November 3, 2015*

(Appeal from Superior Court, judicial district of
Waterbury, Crawford, J.)

*Glenn W. Falk*, assigned counsel, with whom, on the
brief, was *Deborah M. Frankel*, legal fellow, for the
appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with
whom, on the brief, were *Maureen Platt*, state's attorney, and *Don E. Therkildsen, Jr.*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Robert T. Madera, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-101 (a) (3); burglary in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-101 (a) (3); robbery in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-134 (a) (4); and home invasion as an accessory in violation of General Statutes §§ 53a-8 and 53a-100aa (a) (1). In addition, the jury also found unanimously, pursuant to a separate interrogatory for each count of the information, that the state had proven beyond a reasonable doubt that a firearm had been used in the commission of the crimes. On appeal, the defendant claims that the court improperly imposed "a five year sentence enhancement on each count pursuant to [General Statutes § 53-202k]."[1] Specifically, the defendant argues that the § 53-202k sentence enhancement provision does not apply (1) to an unarmed coconspirator and (2) to an unarmed accomplice who was not present during the commission of the felony. We agree with the defendant that the court improperly enhanced his sentence with respect to his conviction of conspiracy to commit burglary in the first degree in accordance with our decision in *State* v. *VanDeusen*, 160 Conn. App. 815,     A.3d     (2015), which also was released today. We affirm the judgment of the court in all other respects.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. In early June, 2011, brothers Shawn Kinnel and Marquis Kinnel decided to rob two Waterbury drug dealers, D.O. and his roommate, I.T.[2] In order to ascertain where D.O. and I.T. resided at that time, the Kinnels approached the defendant, who was D.O's first cousin.

On the night of June 13, 2011, the trio drove to D.O.'s and I.T's condominium complex and parked their vehicle on a nearby side street. The Kinnel brothers got out of their car, retrieved two handguns from under the hood of the vehicle, and walked into the complex. The defendant remained inside the vehicle, but moved to the driver's seat and waited for the Kinnels to return.

Inside the complex, the Kinnels entered D.O.'s and I.T's condominium. At that time, D.O. and I.T. were out buying groceries. Once D.O. and I.T. returned, the Kinnels seized them at gunpoint and forced them to lie on the floor with their shirts pulled over their heads to block their vision.

The Kinnels then searched D.O., I.T., and the condominium, taking currency, drugs, jewelry, cell phones, and other valuables. During the search of the condominium, Marquis Kinnel encountered D.O's girlfriend, D.M.,

in her bedroom downstairs. Kinnel ordered D.M. to take off her clothes at gunpoint and then sexually assaulted her. Thereafter, Kinnel ordered D.M. to put on a bathrobe, brought her upstairs, and forced her to lie down on the floor next to D.O. and I.T. with her head covered to block her vision. While she was lying on the floor upstairs, D.M. was sexually assaulted again. Having collected all of the valuables, the Kinnels then fled the condominium in a vehicle they had stolen from D.O. The defendant followed them, driving the vehicle in which the trio had initially arrived. After the perpetrators had left, D.O. called the police.

On June 14, 2011, police tracked one of the stolen cell phones to a Waterbury barbershop. When officers converged there, they found the defendant and Marquis Kinnel inside. Thereafter, the defendant was arrested on an unrelated outstanding warrant and transported to the Waterbury police station, where he eventually gave a voluntary, signed statement detailing his involvement in the crime. In the statement, the defendant attempted to minimize his involvement, claiming that he did not know about the Kinnels' plan regarding D.O. and I.T.

Thereafter, the defendant was charged in a long form substitute information, filed April 30, 2012, with one count of conspiracy to commit burglary in the first degree in violation of §§ 53a-48 (a) and 53a-101 (a) (3) (count one); one count of burglary in the first degree as an accessory in violation of §§ 53a-8 and 53a-101 (a) (3) (count two); one count of conspiracy to commit robbery in the first degree in violation of §§ 53a-48 (a) and 53a-134 (a) (4) (count three); one count of robbery in the first degree as an accessory in violation of §§ 53a-8 and 53a-134 (a) (4) (count four); one count of conspiracy to commit home invasion in violation of §§ 53a-48 (a) and 53a-100aa (a) (1) (count five); and one count of home invasion as an accessory in violation of §§ 53a-8 and 53a-100aa (a) (1) (count six). In addition, on April 30, 2012, the state filed a notice of its intent to seek a sentence enhancement "on each A, B and C felony that results in a conviction."

The defendant elected to stand trial, and the jury found him guilty as charged on counts one, two, four, and six.[3] The jury also considered and answered in the affirmative four separate interrogatories, each of which posited the following question: "Has the state proven to all of you unanimously beyond a reasonable doubt that a firearm was used in the commission of this crime?"

The court sentenced the defendant as follows: On count one, to twenty years of incarceration, suspended after five years (mandatory), and five years of probation; on count two, to twenty years of incarceration, suspended after five years (mandatory), and five years of probation; on count four, to twenty years of incarcer-

ation, suspended after five years (mandatory), and five years of probation; and on count six, to twenty-five years of incarceration, suspended after ten years (mandatory), and five years of probation. In addition, the court enhanced each of the defendant's sentences pursuant to § 53-202k, by the mandatory consecutive five year period of incarceration. The court ordered the primary sentences for counts one, two and four to run consecutive with the primary sentence for count six. The sentence enhancements on counts one and six were to run consecutively, with the enhancements on counts two and four to run concurrently. Accordingly, the total effective sentence rendered by the court was twenty-five years of incarceration, execution suspended after twenty years, followed by five years of probation.[4] This appeal followed.[5]

I

The defendant first claims that, pursuant to our Supreme Court's decision in *State* v. *Patterson*, 276 Conn. 452, 476–84, 886 A.2d 777 (2005), a sentence enhancement should not have been imposed with respect to his conviction of conspiracy to commit burglary in the first degree because § 53-202k does not apply to unarmed coconspirators. We agree with the defendant that the court improperly enhanced the defendant's sentence on this count.

The defendant failed to preserve this claim at trial. He, therefore, now seeks to prevail under *State* v. *Golding*, 213 Conn. 233. 239–40, 567 A.2d 823 (1989).[6] We review the defendant's claim because the record is adequate for review, and the issue is of constitutional magnitude.[7]

Our resolution of the defendant's first claim is controlled by our decision in *State* v. *VanDeusen*, supra, 160 Conn. App. 815, released this same day. In *VanDeusen*, the defendant also raised the issue of whether an unarmed coconspirator's sentence properly could be enhanced pursuant to § 53-202k. In *VanDeusen*, the state argued on appeal that, despite our Supreme Court's decision in *State* v. *Patterson*, supra, 276 Conn. 473–84, holding that § 53-202k does not apply to unarmed coconspirators pursuant to the *Pinkerton* doctrine,[8] the state, nevertheless, could seek a sentence enhancement under "Connecticut's long-standing common-law theory of vicarious coconspirator liability, which existed for decades prior to our court's adoption of *Pinkerton.*" *State* v. *VanDeusen*, supra, 844. We rejected that argument, concluding that the state's common-law theory of vicarious coconspirator liability was "nothing more than an early species of *Pinkerton* without that label" and, thus, subject to much of the same reasoning as was applied by our Supreme Court in *Patterson* when it declined to interpret § 53-202k to include unarmed coconspirators charged pursuant to the *Pinkerton* doctrine. Id., 846. We further noted that if we

were to accept the state's argument, it would allow the state "to avoid *Patterson*'s holding by claiming that it was not seeking to hold a defendant liable under the *Pinkerton* doctrine, but rather, under the common-law theory of vicarious coconspirator liability," rendering "our Supreme Court's decision in *Patterson* a virtual nullity . . . ." Id., 846–47. On the basis of this reasoning, we held that "a § 53-202k enhancement does not apply to an unarmed coconspirator . . . ." Id., 847.

Guided by our analysis in *VanDeusen*, we conclude in this case that the defendant has demonstrated that a constitutional violation exists and that this violation deprived him of a fair trial. Accordingly, the defendant is entitled to have the sentence enhancement under § 53-202k on count one vacated.

## II

The defendant next claims that, with respect to his conviction on the remaining charges as an accessory to burglary, robbery and home invasion, the court improperly enhanced his sentence on each count pursuant to § 53-202k.[9] According to the defendant, because he was not physically present during the commission of those crimes and there was no finding by the jury that he knew that his codefendants would use a firearm, § 53-202k was inapplicable. The defendant further argues that our Supreme Court's decision in *State* v. *Davis*, 255 Conn. 782, 787, 772 A.2d 559 (2001), should be reconsidered. In *Davis*, the court held that unarmed accessories are subject to having their sentences enhanced under § 53-202k. More specifically, the defendant, relying on General Statutes § 1-2z, which was enacted after *Davis* was decided, contends that "[t]he expansive meaning attributed to § 53-202k in *Davis*, sweeping in all persons whether armed with a firearm or not, cannot be squared with the plain language [of § 53-202k]." During the pendency of the present appeal, however, our Supreme Court decided two appeals that raised virtually identical arguments regarding the Supreme Court's interpretation of § 53-202k in *Davis*. See *State* v. *Flemke*, 315 Conn. 500, 516, 108 A.3d 1073 (2015), and *State* v. *Danforth*, 315 Conn. 518, 536, 108 A.3d 1060 (2015). We conclude that those decisions, each of which reaffirmed *Davis* and its holding that enhancement of sentences for unarmed accomplices is permissible under § 53-202k, are fully dispositive of the claim raised by the defendant in the present appeal.[10]

In *Flemke*, the defendant claimed that his sentence for robbery in the first degree as an accessory had been improperly enhanced pursuant to § 53-202k because, by its terms, § 53-202k applies only to a person or persons who actually use a firearm during the commission of a class A, B or C felony, and it was undisputed that only his accomplice was armed during the commission of the robbery at issue. Like the defendant in the present case, the defendant in *Flemke* urged the court to over-

rule its earlier decision in *Davis* because of the legislature's subsequent enactment of § 1-2z, or, alternatively, to limit *Davis*' holding to cases in which the jury is instructed to find beyond a reasonable doubt that the defendant intended that a firearm be used by another participant in the commission of the offense.

Our Supreme Court rejected the claim in *Flemke*, stating: "We decline the defendant's invitation to overrule or otherwise limit *Davis* for several reasons. First, this court previously has concluded that the legislature, in enacting § 1-2z, did not intend to overrule any case decided prior to its enactment that construed a statute in a manner that conflicts with the dictates of § 1-2z. . . . Second, contrary to the defendant's claim, our conclusion in *Davis* that § 53-202k applies to unarmed accomplices is in no way inconsistent with the plain meaning rule set forth in § 1-2z. Third, even if we agreed with the defendant that we should reconsider our interpretation of § 53-202k in *Davis*, the legislature has given no indication since *Davis* was decided that it disagrees with our construction of § 53-202k in that case, thereby giving rise to an inference that the legislature approves of our reading of the statute. Finally, our reasoning in *Davis* forecloses the defendant's contention that we should limit our holding in that case by construing § 53-202k to apply to an unarmed accomplice only if that accomplice intends that another participant in the underlying class A, B or C felony would use a firearm in the commission of the offense." (Citation omitted.) *State* v. *Flemke*, supra, 315 Conn. 506–507. The Supreme Court thereafter concluded that "[i]n light of *Davis* . . . it is perfectly clear that, *under § 53-202k, the state was required to prove only that the defendant was guilty of being an accessory to the underlying* [*crime*] *and that a firearm was used in the commission of the* [*crime*]; the state was not required to also prove that the defendant intended that a firearm would be used during the robbery." (Emphasis added.) Id., 516.

Similarly, in *Danforth*, the defendant claimed that the trial court improperly enhanced her sentence pursuant to § 53-202k because § 53-202k does not apply to unarmed accomplices and it was undisputed that she was not armed during the commission of the robbery for which she was charged as an accessory. She also sought to have the court overrule *Davis* or limit its applicability to cases in which the jury expressly found that the defendant intended that a firearm be used by another participant in the underlying felony. The court, on the basis of its decision in *Flemke*, released that same day, rejected the claim.

In the present case, the jury expressly found beyond a reasonable doubt that a firearm had been used in the commission of each of the crimes of which the defendant was found guilty as an accessory. Pursuant to *Davis*, as reaffirmed in *Flemke*, that finding provided

a sufficient basis for the court to impose a sentence enhancement pursuant to § 53-202k. See id. It is axiomatic that, "[a]s an intermediate appellate court, we are bound by Supreme Court precedent and are unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith*, 107 Conn. App. 666, 684–85, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008). In light of our Supreme Court's decision in *Flemke*, the defendant cannot demonstrate that a constitutional violation exists, and, therefore, his claim fails under *Golding*'s third prong.

The judgment is reversed only as to the sentence enhancement under § 53-202k of the sentence on the conviction of conspiracy to commit burglary in the first degree and the case is remanded with direction to vacate that enhancement and to resentence the defendant in accordance with this opinion.[11] The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[2] As we will set forth in this opinion, a sexual assault occurred during the commission of the crimes at issue in the present appeal. Thus, in accordance with our policy of protecting the privacy interests of the victims of the crime of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] The jury found the defendant not guilty on counts three and five.

[4] Both the defendant and the state are in agreement that the court imposed the sentence as indicated, which comports with the sentence as stated by the court at the sentencing hearing. The clerk's handwritten file entry as well as the judgment mittimus and the draft judgment file prepared by the clerk, nevertheless incorrectly indicate that the court imposed a total effective sentence of forty-five years of incarceration, execution suspended after twenty years, followed by five years of probation. Although that error has not been raised as an issue on appeal, this court has the inherent authority to "direct correction of [a] mittimus so that it comports with the trial court's unambiguous judgment of conviction." *Commissioner of Correction* v. *Gordon*, 228 Conn. 384, 393, 636 A.2d 799 (1994). Nevertheless, because we remand this matter for resentencing, it is unnecessary to order that a corrected mittimus or judgment file be prepared in the present case.

[5] We note that after reviewing the issues on appeal, this court sua sponte stayed argument of the appeal pending a final disposition by our Supreme Court of *State* v. *Danforth*, 315 Conn. 518, 108 A.3d 1060 (2015), and *State* v. *Flemke*, 315 Conn. 500, 108 A.3d 1073 (2015), each of which raised similar issues concerning the interpretation of § 53-202k.

[6] "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if all of the following condition are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance

of the actual review." (Citations omitted; internal quotation marks omitted.) *State* v. *Otero*, 49 Conn. App. 459, 463 n.6, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998); see *In re Yasiel R.*, 317 Conn. 773, 781, A.3d (2015) (modifying *Golding*'s third prong).

[7] We conclude that this claim is of constitutional magnitude because if the defendant is correct that § 53-202k does not apply to an unarmed coconspirator, then the jury would have been obligated to find that the defendant possessed a firearm in the commission of a class A, B or C felony—a finding it could not make on this record. See *State* v. *Patterson*, supra, 276 Conn. 484; see also *State* v. *Hill*, 201 Conn. 505, 512, 523 A.2d 1252 (1986) ("[a]n accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt").

[8] "In *Pinkerton* v. *United States*, [328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946)], the United States Supreme Court concluded that under the federal common law, a conspirator may be held liable for criminal offenses committed by a coconspirator if those offenses are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy." *State* v. *Diaz*, 237 Conn. 518, 526, 679 A.2d 902 (1996).

We note that our Supreme Court first recognized the *Pinkerton* theory of liability as a matter of state law in *State* v. *Walton*, 227 Conn. 32, 40–54, 630 A.2d 990 (1993).

[9] We note that the defendant failed to preserve this claim at trial and now seeks to prevail under *Golding*. We review the defendant's claim because the record is adequate and the claim is of a constitutional magnitude. See *State* v. *Davis*, 255 Conn. 782, 787–93 and 787 n.6, 772 A.2d 559 (2001).

[10] At oral argument before this court, defense counsel conceded that our Supreme Court's decisions in *Flemke* and *Danforth* were dispositive of his claims in this appeal regarding the imposition of sentence enhancements on those counts in which the defendant was charged as an accessory.

[11] During oral argument, we raised the issue of resentencing with the parties. The state argued that, if any of the defendant's sentence enhancements are vacated, the case should be remanded to the trial court for resentencing pursuant to the aggregate package theory articulated by this court in *State* v. *Raucci*, 21 Conn. App. 557, 563–64, 575 A.2d 234, cert. denied, 215 Conn, 817, 576 A.2d 546 (1990). The defendant opposed the state's position, arguing that, if any of the enhancements are vacated, the enhancement on that count should simply be vacated.

As our Supreme Court explained recently, "[t]he purpose of the aggregate package theory of sentencing is to ensure that, notwithstanding the judgment of the reviewing court, the original sentencing intent of the trial court is effectuated. . . . It is axiomatic that a trial court has wide discretion to tailor a just sentence in order to fit a particular defendant and his crimes, as long as the final sentence falls within the statutory limits. . . . This same wide sentencing discretion equally applies to a trial court's restructuring of a sentencing plan for a defendant who has been convicted in a multiple count case and who faces a permissible range of punishment based on the individual counts. [W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the . . . court will craft a disposition in which the sentences on the various counts form part of an overall plan. When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture . . . within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal." (Citation omitted; internal quotation marks omitted.) *State* v. *Johnson*, 316 Conn. 34, 40–41, 111 A.3d 447 (2015).

Here, the court's original sentencing plan included running the defendant's four primary sentences concurrently. The longest of those primary sentences, and thus the controlling sentence for purposes of calculating the total effective sentence, was the sentence for home invasion, for which the defendant received twenty-five years incarceration, execution suspended after the statutory minimum of ten years, with five years probation. To each of the primary sentences, the court added a sentence enhancement pursuant to § 53-202k of five additional years of incarceration. By statute, those enhancements had to run consecutive to the primary sentence, but the court had discretion to determine whether the enhancements themselves were to run concurrently or consecutively with each other. The court chose to run two of the enhancements consecutively and the other two concurrent with

the consecutive enhancements, the overall effect of which was to enhance by a total of ten years the total effective primary sentence of ten years to serve, thus resulting in a total effective sentence of twenty years to serve. Our decision today requires the court to vacate one of the two consecutive sentence enhancements, thereby altering the court's original sentencing architecture by reducing the mandatory time the defendant must serve from twenty to fifteen years. In light of that disposition and the sentencing court's legitimate interest in reviewing the efficacy of the original sentencing plan, we agree with the state that a remand to the trial court for resentencing is appropriate.