## STATE OF CONNECTICUT *v.*
## CHRISTOPHER CAROLINA
### (AC 27205)

Flynn, C. J., and Bishop and Berdon, Js.

Argued December 3, 2007—officially released March 4, 2008

*Carlos E. Candal,* special public defender, for the appellant (defendant).

*Mitchell S. Brody,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Karen Diebolt,* deputy assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Christopher Carolina, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the fourth degree in violation of General Statutes § 53a-125, conspiracy to commit larceny in the fourth degree in violation of General Statutes §§ 53a-125 and 53a-48, and burglary in the third degree in violation of General Statutes § 53a-103. On appeal, the defendant claims that (1) the trial court improperly charged the jury on the element of unlawful entry for the burglary offense, (2) there was insufficient evidence of unlawful entry to support a conviction of burglary in the third degree, and (3) the court violated his constitutional rights and abused its discretion in limiting his cross-examination of one of the state's witnesses. We affirm the judgment of the trial court.

The following factual and procedural history is relevant to our consideration of the defendant's claims on appeal. On October 5, 2004, Shannon Carney was working as a shift leader at the Dunkin' Donuts at 496 Frost Road in Waterbury. Umberto Nieves was also working there that night. According to Carney, two or three months earlier, she had met the defendant through Nieves, who had known the defendant for ten or eleven

years and was friendly with him. Carney and the defendant had discussed robbing the Dunkin' Donuts where she worked and planned to do so while she and Nieves were both working there. Nieves testified that several minutes before 9:30 p.m. on the night in question, Carney told him that a robbery was going to take place and that the robber was outside the store. Nieves stated that he thought that Carney was joking. Carney testified that approximately fifteen minutes before the burglary, she saw the defendant outside the store wearing sweatpants, a dark colored jacket and a wig, and holding a mask.

At approximately 10:30 p.m., as Nieves exited the store's back door in order to throw out the trash, a man ran into the store, pushing him back inside and through the back door, and demanded the money in the store's cash registers. Carney testified that the burglar was acting as if he had a gun in his pocket, but she knew that he was not actually carrying a gun. Nieves and Carney testified that they emptied the contents of the store's cash registers into plastic bags and turned them over to the burglar, who left the store through its back door. Carney testified that she concluded that the defendant was the burglar because the burglar had a mask on and was wearing sweatpants, a dark colored jacket and a wig, just as she had seen the defendant wearing earlier. Additionally, Carney recognized the defendant's voice when he told her to "hurry up" when emptying the cash registers. Nieves called the store manager, at home, and reported the burglary. The manager instructed Nieves to call the police and to lock up the store. Carney claimed at trial that the burglary was staged.

After the police investigated the matter, the defendant was arrested and charged with larceny in the fourth degree, conspiracy to commit larceny in the fourth degree and burglary in the third degree. The defendant

was convicted of all charges and sentenced to a total effective term of four years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that the court improperly charged the jury on the unlawful entry element of the burglary offense. The defendant does not contend that the court failed to instruct on that essential element of the offense, but, rather, that the court should have explained that element more thoroughly. Specifically, the defendant claims that the court should have informed the jury that an individual other than the owner of the premises could have given the defendant license to enter the store through the back door. We are unpersuaded.

At trial, Donna Polzella, the store manager, described the layout of the store as of October 5, 2004. The store's front and inner doors led to a lobby area containing tables. The seating area was separated from a work area by a counter. At one end of the counter was a swinging door, approximately three and one-half feet high, attached to which was a sign indicating "employees only." The work area contained a counter, cash registers, shelves holding trays of doughnuts, and coffee machines. An open passageway led to the back area of the store. The back area contained a kitchen, a manager's office and a closet containing a water heater, buckets and brooms. From this back area of the store, there was a door that opened out into an alley and a garbage dumpster. No signs were attached to this door. Polzella testified that the back door of the store was always locked and that only store employees were authorized to pass through the counter's swinging door and into the work and back areas of the store. Polzella further testified that store procedure specified that only daytime personnel were authorized, at the conclusion of a

shift during a cleanup period, to use the back door to take garbage outside to the dumpster located behind the building. Polzella indicated that Carney was a night shift leader and was responsible for handling customer and employee concerns during her shift. Carney also testified that nonemployees were not permitted to go past the front counter into the back area of the store or to enter the store through its back door.

In its charge to the jury, the court indicated that the state could not satisfy its burden of proving the unlawful entry element of burglary in the third degree if the evidence showed that the defendant was licensed or privileged to enter the building. The court stated that the determination was dependent on whether the defendant had the "consent, either express consent or implied consent, from the owner of the Dunkin' Donuts to enter the building at the time and in the manner of the entry." The defendant objected to the charge on the ground that it limited the prerogative to grant consent to enter to the owner of the premises and not also to the possessor of the premises.

"We first set forth the well established standard of review for a challenge to the propriety of a jury instruction. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [W]e must determine whether the jury instructions gave the jury a reasonably clear comprehension of the issues presented for [its] determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. . . . [I]n our task of reviewing jury instructions, we view the instructions as part of the whole trial. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Moreover, [a]

refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. . . ." (Citation omitted; internal quotation marks omitted.) *Ravenswood Construction, LLC* v. *F. L. Merritt, Inc.*, 105 Conn. App. 7, 11–12, 936 A.2d 679 (2007).

General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein." General Statutes § 53a-100 (b) provides in relevant part: "A person 'enters or remains unlaw-fully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so."

"A license in real property is defined as a personal, revocable, and unassignable privilege, conferred either by writing or parol, to do one or more acts on land without possessing an interest therein. . . . Generally, a license to enter premises is revocable at any time by the licensor. . . . It is exercisable only within the scope of the consent given. . . . The phrase licensed or privileged, as used in General Statutes § 53a-100 (b) is meant as a unitary phrase, rather than as a reference to two separate concepts." (Internal quotation marks omitted.) *State* v. *Morocho*, 93 Conn. App. 205, 218, 888 A.2d 164, cert. denied, 277 Conn. 915, 895 A.2d 792 (2006).

The defendant argues that the court should have charged the jury that the possessor of the premises, not only the owner, could consent to his entry, thereby giving him license and privilege to enter. Specifically, the defendant contends that the evidence showed that his entrance through the back door was not unlawful because Carney had consented to his entry. Even if we assume arguendo that Carney, as the shift leader, had

the authority to consent to the defendant's entry through the back door,[1] the evidence does not support the contention that she was the one who let him in the back door or that he gained entry through anyone's consent.[2] Indeed, there was no evidence before the jury that anybody gave the defendant permission to enter the premises. The evidence indicated that the defendant gained entry through the back door by pushing past Nieves when Nieves had opened the rear door in conjunction with taking garbage to the dumpster from the store. Although, Carney testified that she intended to let the defendant in the back door and had informed Nieves that there would be a burglary that night, there was no evidence that either Nieves or Carney gave the defendant permission to come in the back door. Accordingly, the court properly declined to give the defendant's requested charge, as it was unsupported by the evidence.

II

The defendant next claims that there was insufficient evidence of unlawful entry to support his conviction of burglary in the third degree. We disagree.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test.

[1] In support of his claim, the defendant asserts that "a license or privilege to enter premises may derive from a transaction between the possessor and the actor . . . ." *State* v. *Grant*, 6 Conn. App. 24, 30, 502 A.2d 945 (1986). It is unclear, however, that Carney, as the shift leader, was the "possessor" of the premises and whether, as such, she could consent to the entry when the purpose was to commit a crime therein. In declining to give the defendant's requested charge, the court indicated that "possessor" refers to "legal possessors such as tenants," and that employees are not legal possessors of the premises. Because there was no evidence, however, that Carney allowed the defendant admittance through the back door, we need not reach this issue.

[2] In his brief to this court, the defendant asserts that Carney "met with the defendant in the rear entrance to the store moments before his entry and instructed him how and when to enter." The record is, however, devoid of any evidence in support of this recitation of facts.

First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Hyde,* 104 Conn. App. 574, 577–78, 935 A.2d 639 (2007), cert. denied, 285 Conn. 910, 940 A.2d 809 (2008).

At trial, the state introduced evidence that the back door was always locked, that only store employees were authorized to pass through the counter's swinging door and into the work and back areas of the store, and that only employees were authorized to use the back door to take garbage outside to the dumpster in the back of the building. The evidence further indicated that although Carney had told Nieves that the store was going to be robbed that night, he thought it was a hoax, and that when the defendant entered the back door, he did so by pushing past Nieves while Carney was at the front of the store.[3] There was no evidence that the defendant gained access to the store through any means employed by Carney, or that Carney had told the defendant that he could gain access through this passageway normally reserved only for employees. There also was no evidence that the defendant had been given the impression from Carney that the rear door would be opened to ease his entry into the premises. On the basis of the evidence presented, the jury reasonably could have found that the defendant's entry was unlawful.

### III

The defendant's final claim is that the court violated his constitutional rights and abused its discretion in restricting his cross-examination of Gregory West. Specifically, the defendant contends that although the court properly permitted him to cross-examine West regarding a prior felony conviction, namely, conspiracy to commit robbery, it improperly prohibited him from

---

[3] The defendant contends that there was insufficient evidence of unlawful entry because Carney, as the shift leader, knew that he would enter the premises through the back door to steal from the store. The defendant argues that, because Carney thereby invited him to enter the premises, his entry was lawful. Contrary to the defendant's claim, however, Carney testified that she did not recall any of the specifics that she and the defendant had discussed in planning the theft, and there is no evidence that Carney was aware that the defendant would enter the premises through the back door.

inquiring as to the details of that robbery plan in that they closely mirrored the facts of the present case. We disagree.

West testified that on October 5, 2004, at approximately 9:30 p.m., he was seated and drinking coffee in the Frost Road Dunkin' Donuts and was waiting for the store to close and for Carney, whom he had been dating for a couple of months, to finish work. West heard a commotion in the back area of the store and observed a man, who was dressed in a "hoodie" and wearing a hockey mask with black or brown skin showing around the edges, emerge from the store's back area. Because the defendant was wearing a mask, West was unable to identify him.

On cross-examination, West admitted to having a prior robbery conviction. In response to the state's objection, the court instructed the jury that it could consider only the fact of West's prior felony conviction. The defendant objected to not being permitted to inquire as to the details of the crime for which West was previously convicted. He contended that the details of the previous conviction were relevant to West's credibility because the offense was the same and, therefore, related to his interest in the present case.

Subsequently, prior to West's direct examination during the defendant's case, the defendant renewed his objection to the limited scope of his cross-examination of West in that he had learned that the prior conviction resulted from a robbery that was planned by employees and was, thus, factually identical to the case at hand. The defendant contended that this factual similarity pertained to West's credibility. On the basis of the well established principle that larcenous acts tend to show a lack of veracity; see *State* v. *Swain*, 101 Conn. App. 253, 267, 921 A.2d 712, cert. denied, 283 Conn. 909, 928 A.2d 539 (2007); the court allowed the defendant to

introduce the fact that West was convicted of robbery. The court, however, did not allow the introduction of the details of that robbery.

"It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Mungroo*, 104 Conn. App. 668, 680–81, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008).

"It is well established that the trial court has discretion on the admissibility of prior convictions. . . . Where the defendant admits to prior convictions on direct examination, the customary impeachment inquiry on cross-examination is limited to the name of the crime and the date of conviction . . . ." (Internal quotation marks omitted.) *State* v. *Vitale*, 76 Conn. App. 1, 9, 818 A.2d 134, cert. denied, 264 Conn. 906, 826 A.2d 178 (2003). "When prior convictions are admitted to impeach the credibility of a witness through a general inference of bad character, the facts underlying the conviction are generally inadmissible. . . . [C]ross examination, in quest for the truth, provides a means for discrediting the testimony of a witness . . . and matters that may not otherwise be relevant become so for the purpose of credibility." (Citation omitted; internal quotation marks omitted.) *State* v. *Marino*, 23 Conn. App. 392, 403, 580 A.2d 990, cert. denied, 216 Conn. 818, 580 A.2d 63 (1990). Because the restriction

of cross-examination regarding the facts underlying a witness' prior felony conviction does not rise to the level of a constitutional violation, the defendant bears the burden of demonstrating the harmfulness of an error in the failure to admit such facts. See *State* v. *Denby*, 198 Conn. 23, 32, 501 A.2d 1206 (1985), cert. denied, 475 U.S. 1097, 106 S. Ct. 1497, 89 L. Ed. 2d 898 (1986).

Our Supreme Court recently noted: "[A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . [O]ur determination that the defendant was harmed by the trial court's [evidentiary rulings] is guided by the various factors that we have articulated as relevant [to] the inquiry of evidentiary harmlessness . . . such as the importance of the [evidence] in the prosecution's case, whether the [evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [evidence] on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial." (Internal quotation marks omitted.) *State* v. *Jacobson*, 283 Conn. 618, 641–42, 930 A.2d 628 (2007).

Here, even if the exclusion of the facts underlying West's prior conviction was improper, we conclude that it was, nevertheless, harmless. The identification of the defendant as the perpetrator, as well as the bulk of the evidence regarding the incident, came from Carney. Thus, even if evidence that West was involved in a robbery factually similar to the burglary at hand would have led the jury to question West's credibility, a claim that we find to be tenuous, his testimony was far from essential to the state's case. As such, we conclude that

the defendant has not satisfied his burden of establishing that the restriction on his cross-examination of West substantially affected the verdict.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

[4] The defendant also claims on appeal that the restriction of his cross-examination of West violated his constitutional right to present a defense, namely, "a theory of defense which would have rightfully shifted the spotlight onto someone else other than the defendant [who] could have been involved in the conspiracy." The defendant did not, however, indicate at trial that he was attempting to inculpate West in the burglary. We know of no support for the defendant's attempt to pursue a new theory of defense for the first time on appeal.