STATE OF CONNECTICUT *v.* KENNETH GRIGGS
(SC 18049)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued February 11—officially released July 29, 2008

*Cameron Dorman,* special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario,* assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, *Vicki Melchiorre,* senior assistant state's attorney, and *Chris Pelosi,* assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The defendant, Kenneth Griggs, appeals[1] from the judgment of conviction rendered by the trial court, *Hon. John F. Mulcahy,* judge trial referee, after a jury trial, of attempted murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), larceny in the first degree in violation of General Statutes § 53a-122 (a) (3), and larceny in the second degree in violation of General Statutes § 53a-123 (a) (3).[2] Thereafter, the defendant appealed, claiming that the trial court improperly: (1) instructed the jury on the crime of attempted murder; (2) admitted the testimony of the state's inspector; and (3) admitted evidence of the defendant's prior domestic violence convictions. We disagree with the defendant and affirm the judgment of the trial court.

---

[1] The defendant appealed from the judgment of conviction to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Additionally, the defendant was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (3), but that count, which had been charged in the alternative to attempted murder, was dismissed when the defendant was convicted of the greater offense.

The defendant also was charged, in a second information, with violation of probation in violation of General Statutes § 53a-32. The defendant's probation was revoked on January 31, 2004, but he does not challenge that judgment on appeal.

The jury reasonably could have found the following facts. The relationship between the victim, Charles Gibbons, who is seventy-seven years old, and the defendant is of long standing. The victim, a friend of the defendant's father, had known the defendant since he was a child and had assisted the defendant in paying his child support obligations by hiring him to perform work in the apartment building that the victim manages and by lending him money.[3] The sudden souring of that relationship forms the basis of this criminal appeal. Late on the night of November 5, 2004, the intoxicated defendant entered a nearby sports bar and claimed that the victim had called him for help and that he needed to enter the victim's apartment building. A sports bar employee, who was familiar with the victim and had a key to his building, accompanied the defendant to the victim's apartment with a bouncer from the bar because she was hesitant to permit the defendant to enter the building unaccompanied. The victim, however, had not called the defendant for help, and the defendant changed his story when the victim answered the door, claiming that he was just stopping by to check on him.

The next day, the victim arrived at the parking lot adjacent to his building. The victim, who has emphysema and uses a portable oxygen tank, was having difficulty breathing and asked a parking lot employee to help him carry groceries up to his apartment while he rested on the stair landing. After the parking lot employee deposited the groceries, he returned the victim's keys and left, while the victim continued up the stairs to his apartment, which was the only occupied apartment on the sixth floor. As the victim opened the door to his apartment, the defendant came up from behind, hit him in the head with the oxygen tank, struggled with him, and pushed him backwards down the

---

[3] At the time of the incident, the defendant owed the victim $4000 and was more than $15,000 in arrears on his child support obligations.

metal spiral staircase. The victim recognized the defendant, despite his glasses having been knocked off,[4] and questioned him by name,[5] to which the defendant replied, "I'm going to kill you, you son of a bitch." During the struggle, the defendant took $3600 in cash from the victim, along with his car keys, and said, "I need [these]. You won't be needing them." The defendant then picked up the victim's cell phone, which had landed a short distance away, smiled and said, "[Y]ou won't be needing this." The defendant left the victim lying injured and bleeding on the floor, threw the cell phone in the trash can in the lobby and drove away in the victim's car, at which point he was observed by the sports bar bouncer, who recognized the defendant as wearing the same clothes from the night before.[6]

On November 7, 2004, after becoming concerned because they had not seen the victim, and because his apartment light had been left on, two of the victim's acquaintances went to his apartment. They found the victim conscious but lying injured on the floor at the bottom of the stairs in a pool of blood with no supplemental oxygen. He was found approximately twenty-one hours after the incident, and after he had tried and failed to reach the nearby fire alarm to call for help. After being transported by ambulance to the emergency room, the victim was diagnosed with bruises, lacerations, a fractured left clavicle, dehydration and early renal failure. The victim spent a week in the hospital, followed by approximately four to five months of physical therapy. He also had to use a wheelchair for some time, and was in a scooter at the time of trial.

---

[4] The victim visually recognized the defendant during their struggle at close range and also recognized his voice.

[5] The victim testified that he had said, "[W]hat are you doing, Kenny?" He later identified Kenny as the defendant.

[6] The victim's car was later found in Springfield, Massachusetts, where the defendant fled after the incident. The defendant admits that he fled to Springfield, but denies taking the car.

The victim reported the November 6 incident to the police and a warrant was issued for the defendant's arrest. On November 22, 2004, the defendant notified his probation officer[7] that he was aware of the outstanding arrest warrant and thereafter the defendant turned himself in to the Hartford police.

The defendant pleaded not guilty to all of the charges and elected a jury trial. The defendant testified in his own defense, claiming that he had been drinking on the day of the incident and that he went to see the victim, who was not at home. The defendant testified that after he napped and then left the apartment for a brief period, he returned to the sixth floor of the victim's apartment building and found him lying injured at the bottom of the stairs. The victim refused the defendant's assistance and falsely accused him of theft. In response, the defendant testified that he became confused and panicked, took the victim's cell phone, which did not appear to be functioning properly because it had no reception or power, and either threw the phone in the trash can or placed it on the security desk in the lobby.[8] The defendant also testified that the victim did not appear to be hurt severely or to want assistance.[9]

[7] The defendant had been placed on probation for operating a motor vehicle while his license was under suspension and for operating a motor vehicle while under the influence of intoxicating liquor or drugs as a second offender. His probation was later revoked. See footnote 2 of this opinion.

[8] Although the defendant claimed that the victim's cell phone had no reception in the area where he found the victim, and that the cell phone did not appear to be functioning properly, the security guard at the victim's apartment building testified that the cell phone was discovered because it rang while in the trash can in the lobby and appeared to be functioning properly. Additionally, Richard Cousins, an inspector with the Hartford state's attorney's office, tested the victim's cell phone on the day of his trial testimony and testified that the cell phone was functioning properly and had reception in the area where the victim had been found. See footnote 23 of this opinion.

[9] The defendant's testimony conflicted with his statement to the police. In that statement, the defendant claimed that he had picked up the victim's cell phone and had informed him that he would call for help, but instead threw the cell phone in the trash can in the lobby because he had decided,

Despite the defendant's testimony, the jury found him guilty of the crimes charged, and the trial court rendered judgment in accordance with the jury's verdict. This appeal followed.

I

The defendant's first claim on appeal is that the trial court improperly instructed the jury on the crime of attempted murder because the charge, which included the four substantial steps that the state had alleged in the bill of particulars,[10] was inadequate and misleading.[11]

in light of the victim's health problems, to allow him to die. The defendant also told police that he felt remorse over his actions and had contemplated suicide. The jury heard this version of events from police detective Mark Fowler, who interviewed the defendant after he turned himself in on November 22, 2004. At trial, the defendant denied telling the detective that he had wanted the victim to die or that he had thought that the victim wanted to die, but, rather, the defendant claimed that he had been referring to his own suicidal thoughts.

[10] The bill of particulars, which the trial court read aloud to the jury as part of its instructions, charged the defendant with, inter alia, the crime of attempted murder. Specifically, count one of the bill of particulars alleged that "the defendant . . . acting with the intent to cause the death of [the victim], attempted to cause said death by intentionally doing or omitting to do anything which, under the circumstances as he believed them to be, was an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime of murder . . . .

"Said alleged substantial step includes, but is not limited to, any of the following actions by the defendant:

"(1) Hitting the victim . . . in the head with an oxygen tank;

"(2) Causing the victim . . . to fall down the spiral staircase;

"(3) After observing the victim . . . lying on the floor bleeding, taking the victim's [cell phone] away from him, thereby preventing the victim from calling for help;

"(4) After observing the victim . . . lying on the floor bleeding, taking his [cell phone] away from him and not calling for help for him."

[11] Because the defendant did not preserve this claim by objecting to the jury instruction at trial, he now seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, the defendant can prevail on an unpreserved claim of constitutional error only if the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to

Specifically, the defendant challenges the trial court's jury instruction on attempted murder as alleged by the bill of particular's fourth substantial step, which charged that the defendant had taken a substantial step toward the crime of murder when, "[a]fter observing the victim . . . lying on the floor bleeding, [the defendant] [took] his [cell phone] away from him and [failed to call] for help for him."[12] The defendant first argues that the fourth substantial step charged was legally insufficient to constitute a substantial step toward the crime of murder because the defendant had a duty to

harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. We conclude that the defendant's claim is reviewable under *Golding* because the record is adequate for review and the claim is one of constitutional magnitude alleging the violation of a fundamental right. See, e.g., *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993) ("[w]e have recognized, for example, that claimed instructional errors regarding the elements of an offense . . . are constitutional in nature, so as to satisfy the second *Golding* requirement" [citations omitted]).

Alternatively, the defendant claims that he is entitled to review under the plain error doctrine. Because the defendant fails to explain why his claim merits such review, we decline the defendant's invitation to review his claim under the plain error doctrine. See *State* v. *Fagan*, 280 Conn. 69, 87, 905 A.2d 1101 (2006) (plain error review is extraordinary doctrine that should be used sparingly), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007); *State* v. *Kemler*, 106 Conn. App. 359, 365, 942 A.2d 480 (declining plain error review when inadequately briefed), cert. denied, 286 Conn. 920, 949 A.2d 482 (2008).

[12] The defendant also challenges the trial court's instruction on the third substantial step. We decline to address this claim, however, because it is briefed inadequately. In his brief to this court, the defendant merely states, without analysis, that "the third enumerated 'substantial step' . . . was inadequate for the same reasons cited above in regard to the fourth enumerated substantial step." See *State* v. *T.R.D.*, 286 Conn. 191, 213–14 n.18, 942 A.2d 1000 (2008) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." [Internal quotation marks omitted.]).

act, that is, to call for help, *only if* he had created the peril suffered by the victim. Therefore, the defendant argues, the trial court should have instructed the jury that the fourth substantial step required a finding by the jury either that the defendant had hit the victim on the head with the oxygen tank (the first substantial step charged) or that he had pushed the victim down the stairs (the second substantial step charged). The defendant also argues that the trial court improperly failed to instruct the jury on the predicate facts necessary to find the defendant guilty of attempted murder, namely, that the jury must find that, in removing the victim's cell phone and failing to call for help, the defendant was aware of the serious nature of the victim's injuries, that he believed that taking the victim's cell phone likely would prevent the victim from seeking assistance, and that the victim's cell phone was within the victim's reach and functioning properly because, otherwise, its removal would not have further endangered the victim.

"Our analysis begins with a well established standard of review. When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995).

"It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . The due process clause of the fourteenth amend-

ment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. . . . *State* v. *Gabriel*, 192 Conn. 405, 413–14, 473 A.2d 300 (1984). Consequently, the failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are. . . . *State* v. *Denby*, supra, 235 Conn. 483–84.

"[I]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . *State* v. *Reynolds*, 264 Conn. 1, 106, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). The test is whether the charge as a whole presents the case to the jury so that no injustice will result. . . . We will reverse a conviction only if, in the context of the whole, there is a reasonable possibility that the jury was misled in reaching its verdict. . . . A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . An instruction that fails to satisfy these requirements would violate the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. . . . The test of a charge is whether it is correct in law, adapted to the issues and sufficient for the guidance of the jury. . . . The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. . . . The purpose of a charge is to call the attention of the members of the jury, unfamiliar with legal distinctions, to

whatever is necessary and proper to guide them to a right decision in a particular case. . . . *State* v. *Lemoine*, 233 Conn. 502, 509–10, 659 A.2d 1194 (1995)." (Internal quotation marks omitted.) *State* v. *T.R.D.*, 286 Conn. 191, 214–16, 942 A.2d 1000 (2008).

The following additional facts are relevant to our consideration of this claim. After the close of the state's case-in-chief, the defendant moved for a judgment of acquittal as to the charge of attempted murder, claiming that the evidence was insufficient to establish that he had caused the victim's injuries or that he had a duty to assist the victim, and, therefore, his removal of the victim's cell phone and his failure to summon assistance for the victim did not constitute a substantial step in the commission of the crime of murder. The court denied the defendant's motion. The defendant reiterated his objection at the charging conference, and, in response, the trial court modified its instruction to inform the jury that the failure to call for help, *standing alone*, would not constitute a substantial step in the commission of the crime of murder.[13]

---

[13] Although the defendant repeatedly had raised an objection to the wording of the substantial step, he ultimately did not object to the trial court's charge as modified, and so this issue was not preserved properly for appeal.

The state claims that the defendant induced the claimed instructional error, and therefore is precluded from review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), because the trial court's instruction with regard to the fourth substantial step was drafted in response to the defendant's concern that he could not be held legally liable for attempted murder solely on the basis of an omission and because the defendant acquiesced to that instruction by not objecting to it. See *State* v. *Cruz*, 269 Conn. 97, 105–107 and n.7, 848 A.2d 445 (2004) (review of induced error not permissible under *Golding*). We disagree. "[T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional error and induced constitutional error." (Citation omitted; internal quotation marks omitted.) *State* v. *Brunetti*, 279 Conn. 39, 59 n.32, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). There was

As is customary, the trial court began its instructions on the elements of the crimes charged by instructing the jury generally on the bill of particulars.[14] Thereafter, the court read to the jury the bill of particulars, which listed the crimes with which the defendant had been charged, including the crime of attempted murder.[15] The court then instructed the jury on the elements of murder and attempted murder, including instructions on the elements of intent, a substantial step, and the requirement that, to find that the defendant's act or omission constituted a substantial step, the jury must find that

no induced instructional error in this case because the defendant had not submitted a request to charge or suggested any instructional language. Cf. *State* v. *Cruz*, supra, 106 (instructional error induced when defendant affirmatively requested challenged language in request to charge); *State* v. *Scognamiglio*, 202 Conn. 18, 25, 519 A.2d 607 (1987) ("It seems a bit disingenuous for the defendant to claim the trial court committed error by instructing the jury on flight when he requested an instruction on that very issue. At least, where no constitutional rights are violated, when an accused requests in writing that an issue be submitted to the jury, he cannot, on appeal, claim error in its submission."); *State* v. *Hinckley*, 198 Conn. 77, 80–81 and n.2, 502 A.2d 388 (1985) (defendant induced instructional error by requesting that trial court include superseded common-law tests in charge).

[14] The trial court instructed the jury that "each charge brought by the state against the defendant is set out in a separate and distinct count of the information bill of particulars. You will have the information bill of particulars with you in the jury deliberation room during your deliberations. You must separately consider and deliberate upon each of these charges or counts separately and independently of the other . . . . The state bears the burden of proof on each of the separate and distinct and independent charges contained in the information bill of particulars. Therefore, with respect to each separate count or charge, you must separately determine whether the state has borne its burden of proving beyond a reasonable doubt each and every element necessary to establish the particular crime charged therein."

[15] The trial court read the bill of particulars to the jury and instructed the jury that "[t]he [s]tate must prove beyond a reasonable doubt that the crime was committed in the specific manner specified in *each separate and distinct count* of the information." (Emphasis added.) For the specific wording of the bill of particulars, see footnote 10 of this opinion. The trial court also instructed the jury that "the document which we refer to as the information bill of particulars, which you will have with you in the jury deliberation room, is not evidence, and no inference of guilt is to be drawn from the fact that an information bill of particulars has been filed for the [s]tate . . . ."

the defendant's conduct was strongly corroborative of a criminal purpose.[16] The court further instructed the

[16] In discussing count one of the bill of particulars, the court stated: "[T]he defendant is charged with attempting to commit the crime of murder. Under our law, the attempt to commit a crime, even if that attempt is not successful, is just as criminal as actually committing the attempted crime. This requires, therefore, that I explain to you both the elements of the crime of murder, the crime which the state claims the defendant attempted, and also the elements of the separate crime of attempting to commit that crime.

"I will first discuss the elements of the underlying crime of murder. General Statutes § 53a-54a defines the crime of murder. That statute reads: A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person. . . . There are two elements, each of which the [s]tate would be required to prove beyond a reasonable doubt in order to obtain a conviction for the crime of murder. One, that the defendant had the intent to cause the death of another person, and two, that acting with that intent, he caused the death of that person. . . .

"Now, again, as I told you earlier, the state does not claim that the defendant actually committed murder. Rather, it claims that the defendant . . . is guilty of attempting to commit that crime, that he attempted to murder [the victim]. As stated, attempt is a separate crime.

"Our attempt statute is § 53a-49 (a) (2). It provides, insofar as it applies here, as follows: A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for the commission of the crime, he intentionally does or omits to do anything which, under the circumstances as he believed them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. The statute then continues in relevant part: Conduct shall not be held to constitute a substantial step unless it is strongly corroborative of the actor's criminal purpose."

The court then reread the attempt statute to the jury, and explained: "Insofar as it applies in this case, the attempt statute sets up two elements, both of which must be established beyond a reasonable doubt, in order to justify a verdict of guilty of attempted murder. One, that the defendant . . . must have acted with the kind of intent required for the commission of the crime he was attempting, that is, murder, and two, acting with that intent, he must have intentionally done or omitted to do something which, under the circumstances as he believed them to be, was an act or omission constituting a substantial step in a course of conduct planned to end in the commission of the crime, that is, murder. . . .

"It is not enough to show that he acted intending to do some unspecified criminal act. He must have acted with the same intent, the same state of mind required for the commission of the crime of murder. . . .

"The state has the burden of proving beyond a reasonable doubt that the defendant acted with the specific intent to cause the death of another person [the victim]. . . .

"[T]he second element of the crime of attempt is that the defendant intentionally acted to carry out that specific intent. Under the circumstances

jury, in the charge now challenged by the defendant, that "[i]n the information bill of particulars the state alleges that the substantial steps claimed [include] but [are] not limited to any of [the] four enumerated circumstances. The fourth enumerated circumstance reads . . . after observing the victim . . . lying on the floor bleeding, taking his cell phone away from him and not calling for help. Not calling for help and/or not rendering or seeking assistance, those circumstances alone, that is, in and of themselves, without more, would not be or constitute a substantial step. You will note that the fourth enumerated circumstance uses the word 'and.' That is, it is worded in the conjunctive, and you must bear in mind that as I previously instructed, conduct in order to constitute a substantial step must be strongly corroborative of the defendant's criminal purpose. That is, you must find, first, intent to kill, and if you do so find, any conduct to be a substantial step must be strongly corroborative of that criminal purpose. The state must

---

as he believed them to be, he must have intentionally engaged in conduct which was a substantial step in a course of conduct which he planned to end in his commission of the crime of murder. . . . To constitute a substantial step, conduct must be strongly corroborative of the actor's criminal purpose. This standard properly directs attention to overt acts or omissions of the defendant which convincingly demonstrate a firm purpose to commit a crime, the crime of murder.

"The act or omissions must constitute more than mere preparation, but at least, must be the start of conduct which will lead naturally to the commission of the crime which appears to the defendant, at least, to be possible of the commission. . . .

"As I've stated previously, the state must prove both the required intent and conduct strongly corroborative of criminal purpose beyond a reasonable doubt to obtain a conviction. . . .

"Before you could find that conduct constitutes a substantial step, you would have to determine from the entire evidence after making the necessary credibility assessments, whether such conduct was, in fact, engaged in, and if so, whether upon consideration of the entire evidence, again making the necessary credibility assessments, the conduct must [be] strongly corroborative of the actor's criminal purpose. In the first count, then, the state must prove beyond a reasonable doubt a substantial step in a course of conduct planned to culminate in the defendant's commission of the crime of murder." See General Statutes §§ 53a-54a (a) (murder) and 53a-49 (a) (2) (criminal attempt).

prove that the defendant acted intentionally, that he had the required specific intent to cause the death of another person, and that he intentionally engaged in conduct constituting a substantial step in a course of conduct planned to end in the crime of murder beyond a reasonable doubt to obtain a conviction."

We conclude that, viewed in the context of the entire charge, which correctly instructed the jury on the statutory elements of murder and attempted murder, the court's instruction on the fourth substantial step did not deprive the defendant of his constitutional right to a fair trial and did not result in an injustice. See *State* v. *Boles*, 223 Conn. 535, 543, 613 A.2d 770 (1992). Although the defendant arguably did not have a duty to assist the victim, and therefore could not have been held criminally liable *solely* for failing to assist the victim, an omission; see generally *State* v. *Miranda*, 274 Conn. 727, 878 A.2d 1118 (2005); 1 W. LaFave & A. Scott, Substantive Criminal Law (1986) § 3.3 (a) and (a) (5), pp. 284, 288 (no legal duty to aid another in peril, but duty may be created by omission where defendant created peril); the defendant was not charged with attempted murder solely on the basis of his failure to act. Rather, the defendant was charged with taking a substantial step in a course of conduct planned to culminate in the crime of murder by taking away the victim's cell phone, an act, *in conjunction with* failing to seek assistance for the victim, an omission. The trial court properly, and repeatedly, instructed the jury that it could not find that the defendant had taken a substantial step toward murder by his failure to call for help alone. We therefore conclude that the trial court was not required to instruct the jury that the fourth substantial step required an additional finding that the defendant had hit the victim on the head with the oxygen tank or that he had pushed the victim down the stairs.[17]

---

[17] Although our research reveals no case directly on point, we find the defendant's act and omission to be analogous to criminal cases in which a

Moreover, the trial court properly instructed the jury that it had to find that the defendant's conduct, namely, his act in conjunction with the omission, was strongly corroborative of his criminal purpose and was done with the specific intent to cause the victim's death. See footnote 16 of this opinion; see also General Statutes § 53a-49 (b); *State* v. *Green,* 194 Conn. 258, 276–77, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). The court's instructions on the fourth substantial step, therefore, instructed the jury to consider whether the defendant acted with the intent to kill the victim when, having told the victim "I'm going to kill you, you son of a bitch," he took the elderly victim's cell phone away from him, saying "you won't be needing this," then subsequently failed to seek assistance and left the elderly victim lying injured and bleeding at the bottom of the stairs of the otherwise unoccupied sixth floor.[18]

We also reject the defendant's argument that the trial court improperly failed to instruct the jury on the predicate facts necessary to find the defendant guilty of attempted murder, namely, that, in removing the victim's cell phone and failing to call for help, the defendant must have been aware of the serious nature of the victim's injuries, that he must have believed that taking

---

defendant purposefully has isolated an injured victim. See *United States* v. *Hatatley,* 130 F.3d 1399, 1406 (10th Cir. 1997) (defendant could be criminally liable for leaving robbery victim badly beaten in cold and remote location because "[w]hen a person puts another in a position of danger, he creates for himself a duty to safeguard or rescue the person from that danger"); *People* v. *Turcios,* 2007 WL 2007935 (Cal. App. July 12, 2007) (entirely apart from assault, defendant's action in leaving victim injured on side of road in remote area sufficient evidence of intent to kill).

[18] A conviction for attempted murder does not require a showing of actual injury, but only intentional conduct that constitutes a substantial step toward causing the death of another. *State* v. *Sharpe,* 195 Conn. 651, 655, 491 A.2d 345 (1985); see also *State* v. *Pinnock,* 220 Conn. 765, 774–76, 601 A.2d 521 (1992) (defendant guilty of attempted murder even though gun did not discharge).

the victim's cell phone likely would have prevented the victim from seeking assistance, and that the victim's cell phone must have been within the victim's reach and functioning properly because, otherwise, its removal would not have worsened the victim's peril. In concluding that the trial court was not required to instruct the jury on these additional facts as they related to the elements of attempted murder, we are guided by the important distinction between a trial court's instructions on the elements of the crime charged, which are prescribed by statute, and a trial court's instructions that provide "proper guidance for [the jury's] determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *T.R.D.*, supra, 286 Conn. 215; see also *State* v. *Smith*, 194 Conn. 213, 216–20, 479 A.2d 814 (1984); *State* v. *Avila*, 166 Conn. 569, 574, 353 A.2d 776 (1974); *State* v. *Alterio*, 154 Conn. 23, 27, 220 A.2d 451 (1966); *Lucier* v. *Meriden-Wallingford Sand & Stone Co.*, 153 Conn. 422, 425–26, 216 A.2d 818 (1966); *State* v. *Murphy*, 124 Conn. 554, 566–67, 1 A.2d 274 (1938).[19]

In providing such guidance to the jury, at times it may be necessary for the trial court to relate the elements of the crime charged to the specific evidence, facts, and theories of the case "to enable [the jury] to understand the nature of the offense charged and the questions which they are to decide, to weigh the evidence applica-

---

[19] This distinction was drawn first in *State* v. *Alterio*, supra, 154 Conn. 27, in which this court relied upon several criminal and civil cases in holding that "[i]nstructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues. *Lucier* v. *Meriden-Wallingford Sand & Stone Co.*, [supra, 153 Conn. 425]; *Giambartolomei* v. *Rocky DeCarlo & Sons, Inc.*, 143 Conn. 468, 472, 123 A.2d 760 [1956]; *State* v. *Hayes*, 127 Conn. 543, 594, 18 A.2d 895 [1941]." (Internal quotation marks omitted.) See also *State* v. *Avila*, supra, 166 Conn. 574 ("[t]he charge gave the jury a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present").

ble to such questions, and to intelligently decide them."[20] (Internal quotation marks omitted.) *State* v. *Murphy*, supra, 124 Conn. 567; see also *General Accident Ins. Co.* v. *Powers, Bolles, Houlihan & Hartline, Inc.*, 38 Conn. App. 290, 297–98, 660 A.2d 369, cert. denied, 235 Conn. 904, 665 A.2d 901 (1995). The trial court, however, retains an element of discretion in determining to what degree, if any, it will comment upon the evidence adduced in a criminal trial. See *State* v. *Hernandez*, 218 Conn. 458, 461–62, 590 A.2d 112 (1991). Specifically, the trial court is *required* to comment on the evidence only to the degree necessary to provide "proper guidance for [the jury's] determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *T.R.D.*, supra, 286 Conn. 215; *General Accident Ins. Co.* v. *Powers, Bolles, Houlihan & Hartline, Inc.*, supra, 297–98.[21]

---

[20] We find the facts of *Smith* to be illustrative of the fundamental distinction between a court's instruction on the elements of a crime charged and its explication, for the purpose of providing guidance to the jury, of how the facts could relate to or comprise those statutory elements. In *Smith*, after instructing the jury on intent generally and the elements of burglary, the trial court reviewed the evidence from which the jury could infer an intent to commit a crime, namely, that "[t]here was testimony to the fact that the lockers were open. There's no testimony that anything was taken from the lockers except the possibility of the keys. In other words, there's no testimony that cash was taken, clothes, tools, engines. Whether or not there was an opportunity to take them is another question for you to determine. One does not have to actually commit a crime to go on a premises with intent to commit a crime. You may have intent to commit a crime but never get the chance to do it." (Internal quotation marks omitted.) *State* v. *Smith*, supra, 194 Conn. 218. This court concluded that "the court's review of the evidence regarding the opportunity to take property clearly guided the jury to consider whether the defendant intended to commit larceny. Given the court's careful relation of the evidence to the elements of the burglary charge, it is not reasonably possible that the jury was misled by the court's failure to read the statutory name and definition of larceny." Id., 219.

[21] In *General Accident Ins. Co.* v. *Powers, Bolles, Houlihan & Hartline, Inc.*, supra, 38 Conn. App. 297–98, the Appellate Court held that the trial court impermissibly instructed the jury to decide a question of law and that the trial court's instructions also were inadequate to guide the jury on issues of fact. "[T]he trial court . . . failed to instruct the jury adequately regarding

Once the jury has received proper guidance, the court then *may*, but is not obligated to, exercise its discretion and further comment upon the evidence and how it relates to the elements of the crime charged. See *State* v. *Hernandez*, supra, 218 Conn. 461–62; *State* v. *Long*, 72 Conn. 39, 43, 43 A. 493 (1899); see also *State* v. *James*, 211 Conn. 555, 571, 560 A.2d 426 (1989); *State* v. *Cabaudo*, 83 Conn. 160, 163, 76 A. 42 (1910); 1 D. Wright & W. Ankerman, Connecticut Jury Instructions (Civil) (4th Ed. 1993) § 6, p. 10. Moreover, not only does the necessity of further comment by the trial court depend upon the unique circumstances of the case and whether such explication is required to guide the jury in determining whether the elements of the crime charged are present, but the nature and extent of the court's further comment also varies by circumstance. See *State* v. *Davis*, 255 Conn. 782, 797–800, 772 A.2d 559 (2001). Finally, although the trial court may choose to comment further upon the evidence after providing proper guidance to the jury, the court does not enjoy unlimited discretion to do so for it must not invade the province of the jury, misstate evidence, or improperly influence the jury. See id., 797; *Heslin* v. *Malone*, 116 Conn. 471, 477, 165 A. 594 (1933).

Having concluded that the trial court properly instructed the jury on the elements of attempted murder, we reject the premise that the trial court was required to instruct the jury on additional facts to the extent requested by the defendant, i.e., that, in removing

the factual findings that underlie the question of law. There were several questions here for the trier of fact to decide. These included whether there was a writing, whether the writing was signed, whether it was [the insured's] signature, and whether [the insured's] written request for a lesser amount of uninsured motorist coverage had been made purposefully and knowingly. . . . The jury heard testimony related to these issues. The only instruction the trial court gave was that the jury was required to find that the insured's request for a lesser amount of uninsured motorist coverage had been purposeful and knowing." (Citation omitted.) Id., 297.

the victim's cell phone and failing to call for help, the defendant must have been aware of the serious nature of the victim's injuries, that he must have believed that taking the victim's cell phone likely would have prevented the victim from seeking assistance, and that the victim's cell phone must have been within the victim's reach and functioning properly. See *Lucier* v. *Meriden-Wallingford Sand & Stone Co.*, supra, 153 Conn. 425–26.[22] We conclude that the court's instructions could not have misled the jury because the trial court's instructions on the elements of attempted murder implicitly directed the jury to consider the defendant's perception of the nature and severity of the victim's injuries and his perception of the likelihood that, by taking the victim's cell phone and failing to call for assistance, the victim would be deprived of potentially lifesaving assistance. See *State* v. *Berger*, 249 Conn. 218, 236, 733 A.2d 156 (1999) ("[w]e conclude that the trial court was not obligated to provide the requested instruction to the jury because the substance of the requested instruction was implicit in the court's charge and did not require further explication"); *Drummond* v. *Hussey*, 24 Conn. App. 247, 249, 588 A.2d 223 (1991) (instruction provided necessary guidance to jury because issue was implicit in instructional language); cf. *State* v. *Elliott*, 177 Conn. 1, 3, 7–10, 411 A.2d 3

---

[22] In *Lucier* v. *Meriden-Wallingford Sand & Stone Co.*, supra, 153 Conn. 425, the defendant argued that the trial court's charge to the jury, which fully instructed the jury on the relevant legal tests and duties, was insufficient because it "did not sufficiently stress the significance of the fact that the accident occurred on a Sunday afternoon, when the defendant's plant was not open for business." This court rejected the defendant's argument and found that the charge, without the more detailed instruction, was sufficient to guide the jury. Id., 426. "In its charge the court expressly reminded the jury that [t]he basic claim of the plaintiffs in this case is that in the afternoon of Sunday, March 18th, 1962, [the decedent] was driving a motorcycle . . . . Repeatedly the charge reminded the jury that they were to consider all of the evidence in the case and the situation as they found it to be on the day in question." (Internal quotation marks omitted.) Id.

(1979). Moreover, the jury had before it direct evidence of the defendant's intent to kill as expressed by his statements to the victim during the incident, including the bald assertion that "I'm going to kill you, you son of a bitch," and his statement in taking the cell phone that "you won't be needing this."

We also reject the defendant's claim that the trial court improperly failed to instruct the jury that they must find that the victim actually could have reached the cell phone or that the cell phone was functioning properly and had reception at the time of the incident. The language of the statute does not require that the circumstances *actually were* as the defendant believed them to be or even that the defendant actually created a risk of injury to the victim. See General Statutes § 53a-49; *State* v. *Williams*, 44 Conn. App. 231, 238, 689 A.2d 484, cert. denied, 240 Conn. 918, 692 A.2d 815 (1997); see also *State* v. *Fuller*, 56 Conn. App. 592, 606, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000); see generally 2 W. LaFave & A. Scott, supra, § 6.3. Instead, we conclude that the trial court properly instructed the jury that it must find that the defendant, under the circumstances *as he believed them to be,* had engaged in an act or omission that constituted a substantial step in a course of conduct planned to end in the crime of murder.

## II

We next address the defendant's other two claims on appeal, both of which involve the trial court's decision to admit testimonial evidence, and both of which we find to be unpersuasive.

We begin with the well established standard of review applicable to evidentiary challenges. "Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the

admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Aaron L.*, 272 Conn. 798, 811, 865 A.2d 1135 (2005).

A

The defendant claims that the trial court abused its discretion by improperly admitting the testimony of Richard Cousins, an inspector with the Hartford state's attorney's office, who testified, during rebuttal, that he had used the victim's cell phone in the area where the incident occurred on the morning of his testimony at trial, and that the cell phone had reception and functioned properly.[23] After Cousins had testified, the defendant had moved to strike the testimony as irrelevant because it did not prove that the cell phone had had reception *at the time of the incident.* The trial court denied the defendant's motion to strike, ruling that the defendant's argument went to the weight of the evidence and not to its admissibility. On appeal, the defendant renews his argument that the testimony was irrelevant, and argues that, even if the testimony had some minimal relevance, any probative value was outweighed by its prejudicial effect. We disagree.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue.

---

[23] Cousins testified that, on the morning of September 28, 2005, the day he testified at trial, he tested the reception and operability of the victim's cell phone from the victim's apartment, the stairs, and the elevator, and found it to be functioning properly and to have reception in all of those areas. On cross-examination, Cousins admitted that he did not know what the state of the cell phone's reception was on the day of the incident, November 6, 2004.

. . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . .

"[Furthermore], [i]t is well established that a trial court has broad discretion in ruling on evidentiary matters, including matters related to relevancy. . . . Accordingly, the trial court's ruling is entitled to every reasonable presumption in its favor . . . and we will disturb the ruling only if the defendant can demonstrate a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *John M.*, 285 Conn. 822, 832, 942 A.2d 323 (2008).

We conclude that Cousins' testimony about the operability of the victim's cell phone was directly relevant to the third substantial step charged, which alleged that the defendant took a substantial step toward the crime of murder when, "[a]fter observing the victim . . . lying on the floor bleeding, [he took] the victim's cellphone away from him, thereby preventing the victim from calling for help." Evidence of the cell phone's operability was probative because the jury reasonably could have inferred that, if the victim's cell phone was functioning properly at the time of trial, it likely had been functioning properly on the day of the incident, and, therefore, the defendant intended to kill the victim by taking away a functional cell phone that he could have used to call for potentially lifesaving assistance. Moreover, Cousins' testimony was relevant to rebut the defendant's testimony that the cell phone was not functioning properly when he found the victim. Accordingly, we conclude that the trial court did not abuse its

discretion in denying the defendant's motion to strike Cousins' testimony.[24]

## B

The defendant's third and final claim on appeal is that the trial court abused its discretion in admitting evidence of the defendant's prior domestic violence convictions because the evidence was not relevant, was admitted solely for the purpose of proving that the defendant had a violent character, and was more prejudicial than probative. We disagree.

The state, outside of the presence of the jury, had requested permission to introduce evidence of the defendant's four prior domestic violence convictions, which involved assaultive or threatening behavior, to rebut the inaccurate impression created by the defen-

---

[24] Even if the trial court improperly had admitted Cousins' testimony, we conclude that such error was harmless. In view of the fact that the state's case against the defendant was particularly strong, the admission was harmless because the disputed testimony was cumulative of the testimony of the victim and the security guard that the cell phone was discovered because it rang while in the trash can and appeared to be functioning properly. Moreover, on cross-examination, the defendant elicited Cousins' testimony that he did not know what the state of the cell phone's reception was on the day of the incident. See *State* v. *Sawyer*, 279 Conn. 331, 358, 904 A.2d 101 (2006) ("[W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial." [Internal quotation marks omitted.]).

We also reject the defendant's argument that the evidence was unduly prejudicial merely because it adversely impacted his credibility as a witness. See *State* v. *Sandoval*, 263 Conn. 524, 544, 821 A.2d 247 (2003) ("[o]f course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted" [internal quotation marks omitted]). It is precisely this function that made the evidence relevant as rebuttal evidence.

dant's testimony that he had only "[a] couple" of domestic violence convictions and had never been engaged in any kind of physical assault.[25] The trial court, finding that many of the details surrounding the defendant's prior domestic violence convictions were "extremely prejudicial," permitted the state to introduce only limited evidence, over the defendant's objection, of the number of domestic violence convictions and the nature of those that involved assaultive or threatening conduct.[26] The trial court later gave a limiting instruction to the jury, explaining that, because the defendant had introduced testimony about the domestic violence offenses, the state was permitted to question him further to a limited extent. The trial court also emphasized that the jury was not to consider this evidence "as any indication that the defendant committed the crimes set forth in this information/bill of particulars, or as any basis on which to draw any inferences of guilt with respect to the charges on which [the defendant] is now standing trial."

Evidence that a criminal defendant has been convicted of prior crimes generally is not admissible due

[25] The state argues that the defendant opened the door to this evidence as follows. During the state's cross-examination of the defendant, the defendant explained that the victim's allegedly false allegation of robbery upset him because "I've been in trouble in the past; I don't need this, you know." During redirect examination, defense counsel asked the defendant: "Yesterday, you said something about having been in trouble before.

"A: Yes.

"Q: What kind of trouble have you been in before?

"A: Mostly motor vehicle offenses, a little of this, a little of that. A couple of domestics with the wives.

"Q: Okay. Anything like this?

"A: Oh, no."

[26] The state was permitted to elicit testimony from the defendant that he had four domestic violence arrests and convictions, including one incident that involved assaultive behavior and another that involved threatening behavior. On redirect examination, defense counsel elicited testimony from the defendant that the convictions were all misdemeanors for which he had paid fines.

to the risk that the jury will believe that "if he did it before he probably did so this time." (Internal quotation marks omitted.) *State* v. *Graham*, 200 Conn. 9, 12, 509 A.2d 493 (1986). Moreover, when prior crimes are "quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility." (Internal quotation marks omitted.) Id. The trial court has discretion on the question of the admissibility of prior convictions and is charged with "the responsibility to exclude evidence where its prejudicial tendency outweighs its probative value." Id. When the defendant admits to prior convictions on direct examination, however, he is said to have " 'opened the door' " to rebuttal by the state. Id., 13. "Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence." Id. "The doctrine of opening the door cannot, of course, be subverted into a rule for injection of prejudice." (Internal quotation marks omitted.) Id. Rather, "[t]he trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence. . . . [I]n making its determination, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal." (Citations omitted; internal quotation marks omitted.) Id., 14.

We conclude that the defendant opened the door to this evidence by testifying as to the number and nature of his domestic violence convictions. Because it is evident that the trial court carefully considered "whether the circumstances of the case warrant[ed] further inquiry into the subject matter"; id.; and limited the

rebuttal evidence "to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence";[27] (internal quotation marks omitted) id.; we conclude that the trial court was well within its discretion to permit the state to elicit testimony on the defendant's prior convictions. Compare *State v. Phillips*, 102 Conn. App. 716, 733–36, 927 A.2d 931 (trial court did not abuse discretion in admitting evidence of prior conviction when defendant's testimony implied he had no prior convictions), cert. denied, 284 Conn. 923, 933 A.2d 727 (2007), with *State v. Graham*, supra, 200 Conn. 11–15 (although witness opened door to impeachment with untruthful testimony, trial court abused discretion in permitting state to introduce evidence of defendant's involvement in other robberies because prejudice outweighed limited probative value when witness already had been impeached). Moreover, the court took steps to minimize any prejudice to the defendant by instructing the jury that it could not consider the defendant's domestic violence convictions as evidence of his criminal propensity, and we presume, without evidence to the contrary, that the jury followed the trial court's instructions. See *State v. Morascini*, 62 Conn. App. 758, 766, 772 A.2d 703, cert. denied, 256 Conn. 921, 774 A.2d 141 (2001).

The judgment is affirmed.

In this opinion the other justices concurred.

---

[27] Although impeachment questions on prior convictions generally are limited to the nature of the crime and the date of conviction; see *State v. Geyer*, 194 Conn. 1, 8, 480 A.2d 489 (1984); *State v. Carolina*, 106 Conn. App. 139, 149, 941 A.2d 946 (2008); we conclude that the trial court did not abuse its discretion by permitting the state to elicit testimony that the defendant had four domestic violence convictions, one of which involved assaultive behavior and one of which involved threatening behavior. This testimony properly was admitted to rebut the defendant's testimony that he had "a couple" of nonviolent domestic violence convictions, and narrowly was limited to that purpose. See *State v. Graham*, supra, 200 Conn. 14. Otherwise, the defendant would have been permitted to make unfair use of this evidence. Cf. *State v. Phillips*, 102 Conn. App. 716, 733–36, 927 A.2d 931, cert. denied, 284 Conn. 923, 933 A.2d 727 (2007).